MAULDIN v. CITY COUNCIL OF GREENVILLE.

1. CONSTITUTION—STATUTES.—The three departments of the State government being separate and distinct, and all legislative power being vested in the General Assembly, an act of the legislature will be declared by the courts to be unconstitutional only when clearly shown to be in conflict with the restrictions imposed by the Constitution of the United States or of this State upon the legislative power of the General Assembly, all presumptions being in favor of the validity of the statute.

2. IBID.—IBID.—MUNICIPAL CORPORATION.—A municipal corporation has only such powers as are granted to it by the General Assembly, and the General Assembly can grant it powers, as of taxation and over streets and ways, only within the limits of the restrictions imposed by the Constitution.

3. IBID.—IBID.—IBID.—LOCAL IMPROVEMENTS—LAW OF LAND.—A city council may, under legislative sanction, levy a tax to pay for improvements to its streets, but it may not assess the cost, or any part thereof, of such improvements exclusively upon abutting real property, to the extent of the supposed benefits accruing from such improvements, there being no express authority therefor to be found in the Constitution or in "the law of the land"—that is to say, the common law and statute law existing at the adoption of the Constitution. But by force of decisions rendered prior to the present Constitution, and, therefore, the "law of the land," within the meaning of the Constitution, the cost of improvements to sidewalks and of drains and sewers may be assessed upon the abutting land.

4. MUNICIPAL TAXATION—LOCAL IMPROVEMENTS.—The policy of this State de-

clared as to municipal taxation and the assessment of property for local improvements.

ONLY RESULT CONCURRED IN.

Before NORTON, J., Greenville, August, 1893.

This was an action by W. L. Mauldin, in behalf of himself and others in like plight with himself, to restrain the city council of Greenville from collecting the assessment laid by defendants upon abutting lands for improvements to a portion of the streets and sidewalks of said city. From a decree of perpetual injunction, the defendant appealed on the following grounds:

1. Because his honor erred in holding that all of the material allegations of the complaint were admitted by the defendant. 2. In ordering and adjudging "that the defendant, the said city council of Greenville, their servants and agents, be, and they are perpetually, enjoined and restrained from collecting, or attempting to collect, the special tax or assessment levied by them upon the property of the plaintiff and other owners of real estate situate on Main street, in the said city of Greenville, to pay the expenses of improving the said street." 3. In holding that the act of the General Assembly (20 Stat., 1372), authorizing the improvement of Main street, in said city of Greenville, and the levying and collection of the assessment complained of, was null and void, in that it violated art. I., § 23, art. I., § 36, art. II., § 33, art. IX., § 8, art. IX., § 9, of the Constitution of South Carolina. 3. In not holding that the answer of the defendant constituted a sufficient return to the rule to show cause theretofore granted, and, therefore, in not dissolving the temporary injunction of date of May 20th, 1893. 4. In not holding that the facts alleged in plaintiff's complaint were insufficient to entitle plaintiff to the injunction and relief prayed for. 5. In not holding that by reason of the facts alleged in defendant's second and third defences, as contained in their answer to plaintiff's alleged cause of action, as set out in his complaint, plaintiff was estopped from disputing the validity of said assessment, or his liability on account thereof. 6. In not holding that the acts and proceedings of defendant touching the matter

complained of in plaintiff's complaint, in improving the street, ascertaining the cost thereof, and levying and collecting the assessment in question, were lawful and regular, being authorized by act of the General Assembly for this State (20 Stat., 1372), and ordinance passed in pursuance thereof. 7. In not holding that plaintiff had a complete and adequate remedy at law for any injury threatened him by reason of the collection of the assessment complained of, and, therefore, not entitled to invoke the aid of the Court of Equity.

*Mr. Jos. A. McCollough,* for appellant.

*Messrs. Earle & Mooney,* contra.

January 23, 1895.  The opinion of the court was delivered by

MR. JUSTICE POPE.  This action in the Court of Common Pleas for Greenville County had for its object a perpetual injunction against the City Council of Greenville, restraining them from any assessment of the property of the plaintiff, and other citizens of said city, who owned land abutting on Main street, beginning at Reedy River, and thence up to the point on said Main street where it is crossed by North street, to pay for two-thirds of the cost of paving the roadway and sidewalk of such street.  The basis of the demand for such relief was, *first,* that the act of the General Assembly which empowered said city council to make an assessment of the property of those citizens for the cost of the paving of such Main street and its sidewalks, so that such citizens should pay two-thirds of the cost of such improvements, said assessment of such two-thirds to be computed against such property holders *pro rata,* according to the frontage of their property on said streets, respectively, was unconstitutional; and, *second,* because such city of Greenville made such assessment without giving the citizens affected thereby any opportunity to contest such assessment so made.  The defendants denied that such legislation was unconstitutional, and, then, in case the court should hold it unconstitutional, claimed that the plaintiff was estopped by his conduct in not opposing its enactment by the legislature, and,

afterwards, by his conduct in not opposing the active steps of the defendant to execute such law.

The Circuit Judge, after a hearing of the cause confined to the complaint and answer, issued the injunction prayed for, and from the decree, therefore, the plaintiff has appealed. The grounds of appeal, &c., will appear in the report.

If the act of the General Assembly, authorizing the defendant to make this assessment, is unconstitutional, no other question raised by the appeal may be said to fairly arise upon the record of the case, and, therefore, necessary to be considered and decided. The act in question may be found on page 1372 of Statutes at Large, vol. 20, and its text is as follows:

"An act to provide for the grading and paving of the streets, public ways, and alleys of the city of Greenville.

"Section 1. Be it enacted by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That the mayor and aldermen of the city of Greenville shall have power and authority, and it is hereby made their duty, to grade, pave, macadamize, and otherwise improve for travel and drainage the streets, public ways, and alleys of said city, or such of them as they may deem advisable, and to construct sidewalks and to pave the same, and put down crossings, curbings, drains, side-drains, and cross-drains, such as may be necessary in their judgment to carry out the provisions of this act.

"Sec. 2. In order to more effectually carry out the authority hereby delegated, the said mayor and aldermen shall have power to assess one-third of the costs of such grading, paving, macadamizing, and improving said streets, public ways, and alleys of said city, both as to sidewalks and roadways, upon the abutting property owners on each side of said streets, public ways, and alleys, so that said property holders in the aggregate shall pay two-thirds of the said cost, and the said city the remaining one-third; said assessments to be paid by said property holders *pro rata* according to the frontage of their property on said streets, public ways, and alleys, respectively; and the money arising from such assessments shall be applied to the payment of interest on, and as a sinking fund to redeem, the

same, under such regulations as said mayor and aldermen may by ordinance prescribe.

"Sec. 3. The assessments provided for in section 2 of this act shall be collected as other taxes in said city are collected, and in such instalments as the said mayor and aldermen shall by ordinance prescribe.

"Sec. 4. Whenever the said mayor and aldermen shall determine to improve any street, public way, or alley, as hereinbefore provided, they shall cause the same to be carefully surveyed, and the proposed grade definitely established, and ascertain as accurately as possible the cost of the contemplated improvement, and shall also cause the frontage of each piece of property fronting on said street, public way, or alley to be determined and fixed, so that the assessment on each property holder may be easily ascertained.

"Sec. 5. To obtain the means of carrying out the provisions of this act on the part of the city, the said mayor and aldermen may issue and negotiate bonds of said city under the provisions of section 31 of the charter of said city.

"Sec. 6. The said mayor and aldermen shall have power and authority by ordinance to provide for all the details necessary and requisite for carrying out the provisions of this act." Approved December 22d, A. D. 1891.

Just now, greater particularity is not needful to bring the issue of the constitutionality of this act before the court, than to say that the defendant has passed the ordinances required by this act, and made the assessments therein contemplated upon the plaintiff as one of the property owners whose property abutted on the front of Main street, in said city, for two-thirds of such cost.

The first question that presents itself here is what power of legislation has the General Assembly of this State? It may savor of extreme care, but it is eminently proper that this court should declare its recognition of responsibility in undertaking to pass upon the rights, duties, and powers of a co-ordinate branch of the State government. We are not unmindful that in the Bill of Rights, incorporated in as a part of our Constitution, section 26 distinctly provides: "In the

government of this commonwealth, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other. * * *" Yet it is made the duty of this tribunal to decide when either of the other two has exceeded the grant of power under the Constitution and laws, when such a question is fairly involved in an action or special proceeding between parties litigant; but any decision which denies efficacy to an act passed by the legislature for the want of constitutional power, is only made after an allowance by us of all presumptions in favor of the rightfulness of such exercise, which are required to be overcome, clearly and certainly, by him who assails such constitutional power.

Our State Constitution, as the grant of its power to the General Assembly in section 1 of article II. is in these words: "The legislative power of this State shall be vested in two distinct branches, the one to be styled the 'senate' and the other the 'house of representatives,' and both together the 'General Assembly of the State of South Carolina.'" We may announce as the result of our considerations, fortified by decisions both before and since the adoption of this our present Constitution, that by the use of the language here quoted, the people, in convention assembled, clothed the General Assembly with the whole legislative power capable of being exercised within our borders, subject only to such restrictions upon, and regulation of, such powers as are embraced in the Constitution itself or that of the United States. *Copes* v. *City of Charleston,* 10 Rich., 501; *State* v. *Hayne,* 4 S. C., 420; *Pelzer, Rodgers & Co.* v. *Campbell,* 15 S. C., 592; *Ex parte Lynch,* 16 S. C., 33; *Utsey* v. *Railroad Co.,* 38 S. C., 399; and other cases since decided. As before remarked, all presumptions are solved in favor of the constitutionality of an act of the legislature, and it devolves upon one who assails it to point out certainly and clearly where it is unconstitutional. This has been undertaken by the respondent in the case at bar, and the duty is now devolved upon this court to pass upon these several propositions.

A municipal corporation, in this State, can only exercise power with which it is clothed by our General Assembly. *State* v. *Maysville,* 12 S. C., 76. And, as we have before seen,

the General Assembly is only able to vest such municipal corporation with powers within the restrictions contained in our own State Constitution and that of the United States. The power of taxation may be given a municipal corporation, but such power when exercised by such municipal corporation must not only be exercised according to the charter thereof, but also within the limits of the Constitution of the State. Amongst the powers of the corporation of the city of Greenville is the control of its streets, ways, &c., and within certain well defined restrictions, such municipality may tax the property within its territorial limits to improve and keep in repair such streets, ways, sidewalks, &c. The respondent concedes the constitutionality of the act of the General Assembly which clothes the city of Greenville with the right by taxation to raise the funds necessary to pay for one-third of the cost of the proposed improvements to the roadway and the sidewalks of the city of Greenville, but he goes further, and insists that the *whole of such cost* should be paid from general taxation in said city.

It is too late in the day to question in our courts that highways (and public streets in our cities and towns are highways) belong to the public. Their being laid out over the lands of private individuals without compensation to the private individuals was maintained in our courts prior to our Constitution of 1868. *Lindsay* v. *Commissioners*, 2 Bay, 38; *Patrick* v. *Commissioners*, 4 McCord, 541. Since our Constitution of 1868, such power exists, but compensation therefor must be first provided. Section 23 of article I. of Constitution of 1868. But for highways (and, as before remarked, Main street in the city of Greenville is a highway) belonging to the public, may taxes be laid upon private citizens, who happen to own the land abutting upon such a highway, to improve such a highway, in exoneration of all other citizens who own property in said city? This is a serious question. Many other States, speaking through their courts of last resort, have so affirmed. It is always to be regretted when a difference in judgment upon the same subjects exists in the courts of last resort in the different States of this Union.

Our oath of office requires us to uphold the laws of *this commonwealth,* subject to such restrictions thereon as exist in the Constitutions of this State and that of the United States. Among the laws of this commonwealth is the organic law as found in the twelfth and fourteenth sections of our Constitution of 1868. The latter section is: "No person shall be arrested, imprisoned, despoiled, or dispossessed of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or *the law of the land.* * * *" When the clause of the Constitution of the State empowering the General Assembly to clothe a city, town, or village with the right to levy a tax are considered, we must also consider sections 12 and 14 of article I. along with them. The sections of our Constitution authorizing the General Assembly to clothe one of its municipalities with the power of taxation, are sections 8 and 9 of article IX., in these words: "Section 8. That the corporate authorities of counties, townships, school districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. And the General Assembly shall require that all the property, except that heretofore exempted, within the limits of municipal corporations, shall be taxed for the payment of debts contracted under authority of law." "Section 9. The General Assembly shall provide for the incorporation and organization of cities and towns, and shall restrict their power of taxation, borrowing money, contracting debts, and loaning their credit."

Great stress is laid by appellant upon the two decisions of this court—*State* v. *Hayne,* 4 S. C., 403, and *State* v. *Columbia,* 6 S. C., 1—as construing the power of taxation by the State itself in the first case, and of taxes laid by a city in the second case. These cases have been recognized by this court repeatedly since they were rendered, and we do not propose to question their ruling authority now. But when examined, it will be ascertained that *State* v. *Hayne, supra,* affirmed the constitutional power of the General Assembly of this State to require a license fee to be paid by an attorney in addition to a tax upon

property, real and personal; while that of *State* v. *Columbia*, *supra*, affirmed the right of the city of Columbia, under its charter, to require a license fee to be paid by a bank within its limits in addition to a tax upon its property. When these cases are critically examined, it will be discovered that the principles presented by the case at bar were in no wise involved then.

We think it will be found that the case of *State* v. *City Council of Charleston*, 12 Rich., 702, decided by the Court of Errors in this State in 1860, will throw great light upon the case at bar. In the case just cited, the city council had determined that it was expedient to widen George street in said city, and for that purpose had, at an expense of $26,000, purchased the land on the north side of said street. Under the act of 1850, the city council had appointed commissioners whose duty it was to ascertain the cost and expense of widening said street, and to assess such cost and expense to be paid by the proprietors of lots and houses on the south side of said street, according to the benefit accruing to such lots. When these assessments were made, such proprietors of lots and houses refused to pay the same, upon the ground that such assessment was "against the laws of the land, in derogation of the right of trial by jury, and is unconstitutional and void." This question arose under the Constitution of 1790. In the ninth article, the second section provided that "no freeman of this State shall be taken, or imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner despoiled or deprived of his life, liberty, or property but by the judgment of his peers, or by the law of the land." While Chancellor (afterwards Chief Justice) Dunkin was discussing the defence, that such power could be successfully referred to and bottomed upon the general power of taxation inherent in every government, he said: "No power is more necessary, none more universally recognized, and, it may be added, none the unjust exercise of which has been, in all countries and all ages, a more fruitful source of complaint and dissatisfaction. Taxes are collected in a summary manner, and without an opportunity to the party of being heard. This legal process (says Judge Nott in *State* v. *Allen*, 2 McCord, 55), which was originally founded in necessity, has

been consecrated by time, &c., *must be an exception to the trial by jury, and is embraced in the law of the land* (italics ours). But in the same case it was held by the court that an imposition by the legislature by the name of *a tax*, yet wanting its qualities, could not be levied and collected as such without violation of the constitutional rights of the citizen, and the act was null and void. Essential characteristics of any system of taxation (properly so-called) are *certainty, equality, universality.*"

The taxation proposed by the city council of Greenville upon the plaintiff, respondent, under the light furnished by *State* v. *City Council, supra,* in order to be legal, must be either directly authorized by the Constitution or by "the law of the land." Certainly there is no provision in the Constitution which directly, or by necessary implication, authorizes this tax. Is there authority for this tax in "the law of the land?" What does this term "law of the land" mean, as interpreted by our courts of last resort? Judge O'Neall, in pronouncing the judgment of the Court of Errors in this State in the case of *State* v. *Simons,* 2 Speer, 761, thus stated the doctrine: "In this State, taking as our guide *Zylstra's Case,* 1 Bay, 384; *White* v. *Kendrick,* 1 Brev., 471; and *State ex rel. Coleman* v. *Maxcy,* 1 McMull., 502; there can be no hesitation in saying that these words mean the common law and the statute law existing in this State at the adoption of our Constitution (1790.) Altogether they constitute the body of the law prescribing the course of justice to which a freeman is to be considered amenable in all time to come."

An examination of our statutes prior to 1790, relating to the improvement of streets and sidewalks, will show that the provisions therein related to the city of Charleston, and that such statutes were confined—that of 1698 (7 Stat., 12), to requiring every inhabitant of Charlestown to mend and raise the sidewalk in front of his house in the manner and to the dimensions therein prescribed, on penalty of forfeiting for each house a penalty to be collected under the warrant of a justice of the peace, and that of 1764, to requiring the construction of sewers or drains and sidewalks. These statutes were considered and upheld with reluctance, in the two cases of *Cruikshanks* v. *The*

*City Council*, 1 McCord, 360, decided in 1821, and *Yeadon* v. *The City Council*, decided in 1828 (cited 12 Rich., 733). And when the act of 1850 (12 Stat., 59, 60,) was considered by the court in the case of *State* v. *City Council*, *supra*, the Court of Errors distinctly repudiated as foreign to our laws any mode of taxation for the improvement of the streets of the city of Charleston, which looked to the assessment of property abutting on George street in that city, according to the benefits to be derived from such improvement to such land owners under the said act of 1850, saying: "As has been said, the general rule knows nothing about *partial assessment for benefits*, or the selection of a portion for a class. Existence of persons or the possession of property, and *not the supposed benefits, are the guide.* When each is taxed according to the value of his property, both equality and certainty may be attained to a reasonable extent; but what may be beneficial, or otherwise, is a matter of opinion or fancy, or vague conjecture" (italics ours).

These principles may be deduced from that case: 1st. The right to tax persons or property abutting upon a public street for improvements made upon such public streets, in exoneration of other persons or property within the same territorial limits as are the persons or property abutting upon a highway or public street, is opposed to "the laws of the land," and is, therefore, unconstitutional. 2d. The right to tax property abutting upon a public street to pay the cost of improvements upon the same, according to the supposed benefit to such property by such improvement, is distinctly repudiated. 3d. The right to tax the land abutting upon public streets for the cost of improvements of sidewalks and sewers in front of such land, is recognized, because such power was exercised by reason of statutes passed before the adoption of the Constitution of 1790, and may, therefore, be said to be embraced in "the law of the land." This principle was recognized *with reluctance*, and only because of previous decisions affirming its existence. We heartily sympathise in the reluctance expressed, and only affirm its existence under the authority of such previous adjudications. When our Constitution was adopted in 1868, this case of *State* v. *City Council*, *supra*, had construed the legislative power of

this State, so far as its exercise in the direction of requiring property abutting upon streets to pay for improvements upon the same according to the benefits derived therefrom, was concerned; and, as before remarked, there is no provision of such instrument, which directly or indirectly contravenes the same. The principle is well recognized, that when previous to the adoption of a new Constitution there exist laws and decisions construing such laws, and their force and power is not directly or by necessary implication denied in the new instrument, such laws and decisions survive with full force and effect. Such being the case, we do not feel at liberty to disregard them, unless we would assume the responsibility, by reversing such decisions, of asserting the existence in our commonwealth of a different system. This latter step we do not feel at liberty to adopt.

It may be frankly admitted that we have employed much of the time since the hearing of this appeal in considering this very question. This consideration of the subject has tended to increase our respect and acquiescence in the previous policy of the State as being bottomed upon the immutable principles of right in the citizen to the enjoyment of his property, freed from any danger of its being taken from him by any such exercise of arbitrary power, when it is remembered that the fundamental object of government is the protection of the life, liberty, and property of each individual residing within a State; that the exercise of the right of taxation is to be supported by the truth that every individual should contribute of his means to defray the expenses of government to enable it to protect life, liberty, and property within its territorial limits; that such taxation is for a public purpose, and must be uniform in its imposition upon all the persons and property within a State when for State purposes, and upon all the persons and property within a municipal corporation when for its purposes; that there exists no power, except the police power, in a State to compel an individual citizen to improve his property, and of this class *Charleston* v. *Werner*, 38 S. C., 488, is an instance, and that the improvement of public streets do not fall within the police power; that the experience of mankind has established

as a truth that in republics no greater protection from unjust taxation exists than the power of the people who select the representatives who lay taxes upon them, to change such representatives, if the taxing power has been unjustly exercised, but that the beneficent results of this principle of our government in this respect is largely denied, when onerous taxation upon a few to the exclusion of the many, is laid by representatives chosen by *the many* against the united opposition of *the few.*

Granted, as it should be, that eminent text-writers and the judicial tribunals of many States of this Union adopt a different view of this matter, why may not the people of this commonwealth adopt a domestic policy at variance with the views of others? We have a settled policy of our own on other grave subjects—for instance, the indestructibility of the contract of marriage save by death. No reason exists, or can be suggested, why the domestic policy of this State touching the mode of taxation for local improvements, should be made to conform to that adopted by any of our sister States.

It is, therefore, the judgment of this court, that so much of the judgment of the Circuit Court as grants a perpetual injunction against the defendant, preventing any assessment upon the property of the plaintiff and other citizens of the city of Greenville, in like plight as the plaintiff, to pay for the cost of improving the roadway of Main street in said city, be affirmed; but where the said judgment enjoins the defendant from levying and assessing upon the plaintiff and others in like plight with him, the cost of the improvements to the sidewalks and drains fronting their respective lands, it be reversed.[1]

MR. CHIEF JUSTICE McIVER concurred in the result.

---

[1] This completes the cases of November Term, 1893.