THE GERMANIA SAVINGS BANK v. TOWN OF DARLINGTON.

1. CONSTITUTION—MUNICIPAL BONDS—TAXES—THE GENERAL ASSEMBLY, under the Constitution of 1868, had authority to authorize a municipality to issue bonds to an amount not exceeding eight per cent. of the taxable property of the municipality, and to collect taxes to pay the same.

2. IBID.—IBID.—CONSTRUCTION OF STATUTES.—A charter of a municipality which authorizes it to issue bonds to "*any amount*," is not unconstitutional, but the constitutional limit must be read as a part of the statute.

3. ASSESSMENT—MUNICIPAL BONDS—TOWN OF DARLINGTON.—The assessment upon which the eight per cent. limit for the issue of rail-

road aid bonds by the town of Darlington must be calculated, is that next preceding the issue.

4. IBID.—CONSTITUTION.—Under the Constitution of 1868, there could only be one assessment for county, State, and municipal taxation. MR. JUSTICE JONES *dissents.*

5. MUNICIPAL AID BONDS—COMMUNIS ERROR FACIT JUS.—The bonds here in question sustained on the doctrine of *communis error facit jus.*

6. MANUFACTURES—BONUS—TAXES.—Sub. 23, sec. 169, Gen. Stat. 1882, did not exempt capital employed in manufacturing from taxation, but only gave it a bonus of State and county taxes.

Before ALDRICH, J., Darlington, January, 1897. Affirmed.

Action by The Germania Savings Bank of Charleston against the town of Darlington.

The Circuit decree following fully states the facts:

The plaintiff is a banking corporation and the defendant a municipal corporation; both were created by and now exist under the laws of the State of South Carolina. Plaintiff brought this action to recover of the defendant the sum of $750, alleged to be due as interest on certain bonds issued by defendant. The action comes before this Court upon an agreed statement of facts. This statement must be read as a part of this decree, because I shall refer to the facts only so far as fairly present the issues to be decided. The railroad now known as the Charleston, Sumter and Northern Railroad had been constructed from a point on the South Carolina Railroad to the town of Sumter, S. C. The town of Darlington made an agreement with the Charleston, Sumter and Northern Railroad Company, looking to the proposed extension of the said road via Darlington to Bennettsville, S. C., in which agreement it was provided that the railroad company would build and equip a railroad from Sumter, S. C., via Darlington to Bennettsville, S. C., and that on completion of said railroad the town of Darlington would contribute certain aid thereto, in bonds, money, material, etc. On December 24th, 1889, the General Assembly of South Carolina passed "An act to amend an act entitled an act to alter and amend the charter of the town of Dar-

lington," approved December 26th, 1884 (20 Stat. at Large, 503), in which, among others, is the following section: "Sec. 29. That the said mayor and aldermen may for the purpose of internal improvements borrow money, issue bonds or scrip therefor bearing not a greater interest than seven per cent., payable at such times as they may think advisable, and payable out of the taxes and income of said town: *Provided*, Said principal of bonds and scrip shall at no time exceed $5,000, except for the purpose of aiding in the construction of railroads, and for that purpose the said mayor and aldermen may issue bonds or scrip to any amount: *Provided further*, That the time, manner and form and payment of said bonds or scrip shall be provided for by the town council of said town, and that no bond shall be sold for less than its par value." On the 23d April, 1890, formal articles of agreement were made between the town of Darlington (the resolutions of the town council being set forth in full in the agreement) and the Central Carolina Land and Improvement Company, a corporation. By this agreement the land and improvement company bound itself to construct and equip a railroad that should be acceptable to the railroad commissioners of the State of South Carolina, from Sumter, S. C., via Darlington to Bennettsville, in said State, where a connection with some railroad giving a northern outlet could be effected. In consideration thereof, the town of Darlington agreed to turn over to the Central Carolina Land and Improvement Company, upon the completion of said railroad, bonds to run for thirty years, at five per cent. per annum, at the rate of $2,000 per mile, not to include sidings and side tracks, from Lynch's Creek to Bennettsville, and to give the Central Carolina Land and Improvement Company a certain tract of land, in the town of Darlington, containing twenty-four acres, and exempt said railroad from town taxes for a period of five years, and to bear equally with the Central Carolina Land and Improvement Company, one-half of all expenses of money expended in obtaining the necessary right of way to Bennettsville. In furtherance of

this agreement, another was entered into between the same
parties, under which eighty of the bonds described in that
agreement at $1,000 each, with certain securities and obliga-
tions mentioned in the schedule annexed to the agreement,
amounting to $5,000, were deposited in escrow with the
American Loan and Trust Company of New York, which
bonds and securities, or such part thereof as was proper,
were to be delivered to the Central Carolina Land and Im-
provement Company upon the performance of them in full
of their agreement, to be evidenced by the certificate of the
railroad commissioners.    The vote of the town was taken
according to act of assembly; the bonds were prepared and
deposited in escrow with the American Land and Trust
Company, and afterwards with the Atlantic Trust Company,
duly substituted as trustee in escrow, instead of the Ameri-
can Loan and Trust Company; and upon the certificate of
the railroad commissioners that the railroad was in all re-
spects completed, the bonds to the amount of $73,000 were
turned over to the order of the Central Carolina Land and
Improvement Company, due notice of which was given to
the mayor of Darlington by the Atlantic Trust Company,
with further notice that the remaining $7,000 of bonds were
held to the order of the town.    These were subsequently
delivered to the town.    The Central Carolina Land and
Improvement Company assigned these bonds left in their
hands to the Atlantic Trust Company, to secure a loan to
be procured by the Central Carolina Land and Improvement
Company, which loan to the amount of $75,000 was pro-
cured, and this amount was all used by the Central Carolina
Land and Improvement Company in the construction of the
railway.    Three of these bonds of the par value of $1,000
each were sold to the plaintiff bank for full value and with-
out any notice, except such as appeared on the face of the
bond, and from the Constitution and Statutes of the State,
and coupons of interest on each bond to the amount of $250,
being part due and unpaid, payment of which was demanded
from and refused by the town, and are now the subject of

this suit. These coupons are those due on the first days of April, 1892, 1893, 1894, 1895, and 1896. The form of the bond is as follows: "The town of Darlington promises to pay to bearer $1,000 on the first day of April, A. D. 1920, with interest thereon, at the rate of five per centum per annum, payable annually on the first day of April each year until maturity, on the presentation of the proper coupons at the office of the treasurer of the town of Darlington, S. C., where the principal will be paid at maturity on the surrender of this bond. This is one of a series of bonds not to exceed in the aggregate $80,000, to be issued to aid in the construction of the Charleston, Sumter and Northern Railroad from Sumter through the town of Darlington to the town of Bennettsville. And in consideration of the said town of Darlington receiving for the said bonds an amount of stock in said railroad equal to the aggregate amount of bonds so received for said purpose by the majority vote of the owners of property within the corporate limits of said town of Darlington, at an election held on the 7th day of March, A. D. 1890, and in pursuance of an ordinance of the town council of the said town of Darlington, dated the 25th day of February, A. D. 1890, passed under authority of an act of the General Assembly of South Carolina, entitled an act to amend the charter of the town of Darlington, S. C., approved 24th December, 1889, and is payable out of the taxes and income of the said town of Darlington." Which ordinance was passed and which election was regularly held pursuant to the said act. The railroad has been built according to contract, is in active operation, and the town has received the full benefit expected from such consideration. There has been issued and delivered to the town stock in the railroad to the amount of 730 shares, which it stipulated it was to receive. The town has sold a part of this stock at par, and used the money received therefor for its own use.

The complaint is in the usual form. I need not refer to the admission in the answer, except to say that it admits that the plaintiff is the owner and in possession of a coupon

bond purporting to be issued by the defendant in the form stated, but denies that the coupon was duly and legally issued by defendant, and denies that the same was bought by plaintiff without notice of the defenses hereinafter set forth. "For a further defense to the first cause of action, the defendant alleges: That the coupon sued on by the plaintiff in the first cause of action belongs to a series of bonds alleged to have been issued by this defendant under certain contracts made the 22d April, 1890, and the 23d April, 1890, between the Central Carolina Land and Improvement Company and the town of Darlington, for the purpose of aiding in the construction of the Charleston, Sumter and Northern Railroad. That the act of the legislature, approved 24th December, 1889, and mentioned in said bond, undertook to authorize the issue of bonds by the mayor and aldermen of the town of Darlington for the purpose of aiding in the construction of railroads, and that such statute is controlled in the amount to be so issued by the provisions of art. 9, sec. 17, of the Constitution of the State of South Carolina, which provides that any bonded debt incurred by any county, municipal corporation or political division of the State, shall never exceed eight per centum of the assessed value of all the taxable property therein. That the said bonds so alleged to have been issued, at the time of the alleged issuance thereof and ever thereafter, were and are invalid, null and void, for want of power of this defendant to issue the same, in that the then mayor and aldermen of this defendant undertook to issue at one and the same time a series of eighty bonds of $1,000 each, aggregating the sum of $80,000; that at the time of the alleged issuance thereof there was already outstanding a bonded indebtedness of the town of Darlington to the extent of $3,000, and that at the time of the issuance of the bonds and coupons referred to in said first cause of action, the bonded indebtedness of this defendant thereby existing and created exceeded eight per centum of the assessed value of the taxable property of this defendant. That under the Constitution of the State of South Carolina all assessments

are required to be equal and uniform, and the rule of such uniformity is the valuation ascertained by the officers and in the manner provided by law, for the purpose of assessment of State and county taxes, and that no municipality can assess for taxation of property at a rate of assessment exceeding that of the rate of assessment ascertained in the manner provided by law for the taxation for State and county purposes. That at the time of the alleged issuance of said bonds, the assessed value of all the property in the town of Darlington, as ascertained by the officers and in the manner provided by law for the purpose of assessment of State and county taxes, aggregated only in the sum of $831,265, and that the bonded indebtedness so existing and created as aforesaid exceeded eight per centum thereof."

The charter of the town of Darlington, prior to the amendatory act of 1889, allowed the issue of bonds for internal improvements, no bond to be sold "for less than its par value," and the issue at no time to "exceed $5,000 of principal." By said act of 1889, the proviso as to the amount which might be issued was amended to read: "Provided, said principal of bonds and scrip shall at no time exceed $5,000, except for the purpose of aiding in the construction of railroads, and for that purpose the said mayor and aldermen may issue bonds and scrip in any amount." Act cited *supra*. The Constitution of South Carolina of 1868 provided that the bonded debt of any municipality "shall never exceed eight per centum of the assessed value of all the taxable property therein." Art. 9, sec. 17. Every intendment shall be made in favor of the validity of a statute, and no act should be held unconstitutional unless it can in no possible way be reconciled with the Constitution. *Fletcher* v. *Peck*, 6 Cranch, 87; *Butler* v. *Pennsylvania*, 10 How., 402. The act and the Constitution must be read together, and when so read, the effect is to allow the town of Darlington to issue bonds in aid of railroads to "any amount" up to the constitutional limit. This limit imposed by the Constitution the legislature could not, and did not, seek to remove. The act is valid.

See *Grenada County Supervisors* v. *Brogden,* 112 U. S., 261; *Presser* v. *Illinois,* 116 U. S., 252.

Defendant contends that the actual issue of bonds by the town of Darlington was in excess of the constitutional limits, viz: eight per cent. of the assessed valuation of property in said town, and, therefore, null and void. The aggregate of the assessment of both real and personal property of the town of Darlington, including the Darlington Manufacturing Company, as made by the municipal authorities in 1890, amounted to $1,019,685. The assessment for the succeeding years all run above $1,000,000. The assessed value of all the property in the town of Darlington, as assessed by the proper officers in the manner provided by law for assessing property for taxation for State and county purposes, was as follows: for 1890, $831,265; 1891, $1,053,860; and 1892, $1,086,660. The total issue of bonds authorized was only $80,000, and the total amount issued was but $73,000. The bonds are dated in 1890, and the contracts under which they were issued were made in that year, and the issue, whether said bonded indebtedness is in excess of the constitutional limit, must be determined by reference to the assessments then existing and of force. $73,000 is less than eight per centum of $1,019,685, the town assessment, and it is more than eight per centum of $831,265, the State and county assessment for the year 1890. Defendant contends that the assessment made by the county and State officials must control, because it is the only legal assessment; and that the municipal assessment must be disregarded, ignored, and of no force or effect, because it is contrary to and without sanction of law. In support of this proposition he cites the case of *The State ex rel. Ross* v. *Kelly, assessor, et al.,* decided November 25, 1895, reported in the 45 S. C., 457.

Mr. Justice Gary, who wrote the leading opinion in said case, says: "The allegations of paragraph 3 of the petition raise the question that the only valuation of real property upon which any taxes in the State of South Carolina (whether State, county, municipal or otherwise,) can be legally

assessed or levied, is the valuation ascertained by the officers and in the manner provided by law for the purpose of State and county taxes." As the law upon this subject, he cited art. 9, sec. 8, of the Constitution of 1868: "That the corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. And the General Assembly shall require that all the property except that heretofore exempted within the limits of municipal corporations, shall be taxed for the payment of the debts contracted under authority of law." Sec. 9. "The General Assembly shall provide for the incorporation and organization of cities and towns, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit." Says Mr. Justice Gary: "Our construction of sec. 8, art. 9, of the Constitution is that, although it provides that corporate authorities of cities, &c., may be vested with power to assess and collect taxes for corporate purposes, yet, in order to make the provision effectual, it is necessary that there should be legislative enactment for that purpose, as this section does not undertake to vest this power directly in the corporate authorities aforesaid, but only provides that it 'may' be vested." Again, he says: "The provisions of sec. 8, art. 9, aforesaid, are in effect a denial of the right of corporations to make assessments of property for taxation until the General Assembly shall grant such right."

The Court holds that "such right" had not been granted to Charleston, or if it ever had been granted, that it was then of no force or effect, repealed by the Constitution of 1868 or subsequent statutes. The Court also held that there was no general law vesting in corporate authorities of cities, towns, &c., the power to assess property for taxation. Mr. Justice Gary says: "Under the foregoing view of the case, there is only one legal assessment for the year 1893 in the city of Charleston, and the duty of the city assessor is

purely ministerial;" and ordered that the writ of mandamus do issue as requested. Mr. Chief Justice McIver, in a separate opinion, concurred in the conclusion reached by Mr. Juctice Gary. He does not hold, as was argued, that in no event can municipal authorities assess property for taxation; on the contrary, he says: "Sec. 1 of art. 9 provides that the General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and hence sec. 8 of that article, permitting the General Assembly to vest in municipal corporations the power to assess and collect taxes for corporate purposes, must be so construed as to conform to the manifest scheme of uniformity expressly required by the previous provisions of the Constitution." His remarks are upon the "scheme of uniformity" required by the Constitution, and he says that the General Assembly may "vest in municipal corporations the power to assess and collect the taxes," but such "power" must conform "to the manifest scheme of uniformity." Mr. Justice Pope dissented; under the Constitution as construed by the Supreme Court, and as I understand it, I hold that the General Assembly could vest in the municipal corporation, to wit: the town of Darlington, power to assess and collect taxes for corporate purposes. By section 16 of "An act to alter and amend the charter of the town of Darlington, approved December 26, 1884, it is provided "That the said mayor and aldermen shall have the power and authority to impose taxes each year for the use of said town; * * * the value of such real and personal property for the purpose of taxation shall be fixed and assessed as hereinafter provided." Sec. 17. "That the said mayor and aldermen shall annually appoint three citizens of said town to assess the value of real estate for taxation," and directs how said assessors shall qualify, and perform their duties. Sec. 18 provides and requires "that every owner of personal property within the corporate limits of said town to make a fair and just return on oath before the clerk of said town, within a time fixed in said public notice, of said personal property for taxation." The section,

at considerable length, covers the assessment of personal property. Sec. 16 of the act of 1884, as amended by the act of 1889 (20 Stat., 504, already cited), provides "That the said mayor and aldermen shall have the power and authority to impose taxes each year for the use of the said town, that is to say, not exceeding fifty cents on each $100 worth of real and personal property being in the limits of said town, except the property of churches, charitable associations, and institutions of learning: *Provided*, That if the said mayor and aldermen should hereafter issue bonds for the purpose of aiding in the construction of railroads, then they may impose an additional tax to raise a sufficient amount to pay the interest on said bonds, which additional tax shall not exceed fifty cents on each $100 worth of real and personal property as above provided. The value of such real and personal property for the purpose of taxation shall be fixed and assessed as hereinafter provided." Secs. 17 and 18 of the act of 1884 were not amended nor repealed, and stand as cited. I conclude, therefore, that the town of Darlington was vested with the power to assess and collect taxes upon the real and personal property within its limits. The assessment by the town authorities was regular and according to law. It is true, that the assessment by the town authorities in 1890 was higher than that made by the State and county officials, but that does not show that the town assessment was either erroneous or illegal. It was the duty of both boards or sets of assessors to assess all property "at a uniform and equal rate." Con., art. 9, sec. 1. Both boards had complete jurisdiction within their own limits. It is just as probable that the State and county board erred in assessing the property too low, as that the town board erred in assessing it too high. If there was any error, it seems to be on the part of the State and county board, for in 1891, and afterwards, they assessed this same property at a higher figure than the town board did in 1890. When the town of Darlington appointed its assessors, and they had duly performed their duty, reported the result to the town,

and the town accepted and acted upon that assessment, the town should not, after this lapse of time, and after the plaintiff and others, in good faith, had purchased its bonds, be allowed to question that assessment. As to the assessment, its force and effect, and the reasons why it must "control" in questions of this nature, see *State* v. *Tolly*, 37 S. C., 551, and *State* v. *Cromwell*, 40 S. C., 26. Counsel for the defendant, in their argument, stated that they did not question the figures as found by the town authorities, if it should be held that said authorities had the power to make an assessment. The defendant next submits, that the total assessment as made by the town authorities is too large, for the reason that the property of the Darlington Manufacturing Company was included in it. This company, the defendant submits, was exempt from taxation by the town, and, therefore, its property should not be included in making up the assessed valuation of the property in town; and if this property was improperly included, the total assessed valuations of the town would be insufficient to warrant the issue of the bonds. The real and personal property of the Darlington Manufacturing Company was, in 1890, assessed by the town assessors as follows: its realty at $70,000, and its personalty at $125,000—in all $195,000. If this amount is deducted from the total assessment of $1,019,685, then the assessed valuation of the property of the town would be insufficient to warrant the issue of the bonds. Was the property of the Darlington Manufacturing Company exempt from taxation by the town? The Darlington Manufacturing Company was entitled to the benefits of sub. 23, sec. 169, of the General Statutes of this State, being the act of 1873, which provided: "Any person who, since 1st January, 1872, has invested or may invest capital in the manufacture of cotton, woolen and paper fabrics, iron from iron ores, and agricultural implements, within this State, shall, for the period of ten years from the date of his investment, be entitled to receive from the treasurer of the State a sum equal to the aggregate amount of State, and from the county treasurer the

aggregate amount of county taxes, less the two mills for school purposes, and from the treasurer of all municipal corporations a sum equal to the aggregate amount of municipal taxes which shall be levied and collected upon the property or capital employed or invested directly in such manufactures or enterprises, not including herein the tax levied upon the land upon which the factories may be erected; the sum of money so to be repaid to be fixed and determined by the comptroller general in accordance with the tax return, the State tax to be paid by the State treasurer on his warrant and the county tax by the county treasurer, under the order of the comptroller general." This section was repealed in 1885 (19 Statutes at Large, 333), but rights acquired under the act were and are not affected by the repeal. The Darlington Manufacturing Company began business some time before 1884—the exact time is not given in the agreed statement of facts. The property of said company was regularly assessed by the town of Darlington, but said town collected no taxes from it. The failure to collect this tax by the town of Darlington cannot affect the question. It was the duty of the town, under the law, to collect the same. The right to "receive," provided for in the act of 1873, *supra*, depended upon such collection; because the Darlington Manufacturing Company, under its terms, "would be entitled to receive" from the treasurer of the town "a sum equal to the aggregate amount of municipal taxes *which shall be levied and collected upon the property or capital employed or invested directly in such manufactures or enterprises.*" It is clear that the company had to pay its taxes, as a condition precedent to its being "entitled to receive" the specified "sum" from the treasurer.

The Constitution of South Carolina (art. IX., sec. 1,) specially limits property which may be exempted from taxation, viz: such as "may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." Section 8, same article, provides that "the General Assembly shall require that all property except that heretofore exempted, within the limits of municipal corporations, shall

be taxed for the payment of debts contracted under the authority of law." The charter of the town of Darlington authorizes it to exempt only "the property of churches, charitable associations, and institutions of learning"—sec. 16 of charter. On all other property, taxes must be assessed and collected. The act cited above says nothing about taxes, except as a measure of the bonus or rebate to be given to the persons specified in it. It does not by its own terms exempt, nor does it authorize any municipality to exempt any person, corporations or property from taxation. This bonus or rebate does not equal the tax paid, because the amount paid for taxes on land and for schools is not returned. This act exempted no person or corporations from taxation; and if it had attempted to do so, it would have been unconstitutional; because, as we have seen, the Constitution directs the General Assembly to require municipalities to tax such property as that owned by the Darlington Manufacturing Company. The General Assembly did not construe said act as exempting such property from taxation. The act of 1873, passed by the General Assembly, could have been repealed at any time, just as it was in 1885. If it exempted property such as that of the Darlington Manufacturing Company from taxation, why did that body insert in numerous municipal charters, as it did in the charter of the town of Darlington, that such municipalities should levy and collect on all property except that of "churches, charitable associations, and institutions of learning." The case of *The Railway Co.* v. *Tribber*, 25 S. C., 260, was an action to recover from the county treasurer money which he had paid under the act in question to the Pelzer Manufacturing Company, under the authority of the comptroller general, as a rebate or return of taxes paid by the company in aid of a railroad under a popular vote. That distinguished jurist, the late Judge Pressley, who heard this case on Circuit, said that the constitutionality of the act did not arise in this case; that if it did, he would hold the act constitutional, not because it exempted property, but because

it was within the power of the legislature to authorize a bonus or gift in aid of enterprises, and it could do so as well by giving them an amount measured by the amount of their taxes as by giving a stipulated sum. The Supreme Court in the opinion speaks of this return as a "rebate," and held that the Pelzer Company was not entitled to the rebate— that its property was taxable, and the company was required to pay the money back to the railroad. I hold that the property of the Darlington Manufacturing Company was not exempt from taxation, and that it is assessable and taxable by the town of Darlington, and any statement of the assessed valuation of the property of said town which omitted it would be defective, incomplete and erroneous. This is the construction put upon the act by the General Assembly and the Courts, and by the town of Darlington itself.

For a further defense to the action, defendant alleges: "That the coupons sued on by the plaintiff belong to a series of bonds alleged to have been issued by the corporate authorities of this defendant, undertaking to act in this regard on the alleged authority of the act of the legislature of the State of South Carolina, approved 24th December, 1889, and mentioned in the said bonds, a copy of one of which bonds is annexed to the complaint herein; and that the said act provides that for the purpose of aiding in the construction of railroads, the mayor and aldermen of the town of Darlington may issue bonds; but that it further provides that no bond shall be sold for less than its par value; and this defendant alleges that the said bonds of such series were never sold at all, but were issued under and by virtue of certain agreements, dated the 22d April, 1890, and the 23d April, 1890, and were so issued for the purpose and for the consideration mentioned in said agreement, to wit: only in exchange for stock of the Charleston, Sumter and Northern Railroad, which was and always has been valueless, and not for their par value; that the consideration of such bonds was not equal to but was less than the par value of said bonds,

and said bonds if sold were sold for less than their par value, and of all the foregoing the plaintiff had due notice."

In the agreed statement of facts, it is said: "When the bonds of the town of Darlington were delivered under the agreement above referred to, a certificate of stock in the Charleston, Sumter and Northern Railroad Company was made out in the name of said town for 730 shares, for the par value of $100 each, and delivered to the town. Afterwards the town surrendered this certificate, and obtained in its stead other certificates, one in its own name for 630 shares, and several in the names of individuals who had agreed to subscribe to the stock of the Charleston, Sumter and Northern Railroad Company. In five cases, at least, the town collected the amount of their subscriptions from each of these five at par, delivering to them upon payment therefor the scrip in the Charleston, Sumter and Northern Railroad, which they received in par exchange for their original scrip for 730 shares above referred to." I think that this disposes of the defendant's allegations that said stock "was and always has been valueless," and that "said bonds, if sold, were sold for less than their par value." These are the allegations of the defendant, and the burden of proving them rests upon defendant, and the "statement of facts" does not sustain them. The value of railroad stock is an ever shifting sum, and the town officials, it is to be presumed, knew what they were doing, and acted in accordance with the facts as they existed in 1890.

Defendant contends that, under the statute amending its charter, the town had to actually borrow cash upon its bonds, which bonds were to be sold for not less than their par value in money, and that the money was to be used by the town to aid in the construction of the railway; that the town was not given any authority to subscribe for stock. The town did not subscribe for stock; the agreement is for the exchange of stocks for bonds. This agreement is between the town of Darlington and the Central Carolina Land and Improvement Company. Upon these bonds the

Central Carolina Land and Improvement Company raised the sum of $75,000, all of which was used in the construction of the railway. The charter of the town of Darlington provides that "No bond shall be sold for less than its par value." This clause comes in at the end of the section, and is separated from the clauses authorizing the issue of the bonds "for the purpose of aiding in the construction of railroads." The act does not direct any one to sell the bonds, nor how they should be sold; it does not even say that they must be sold. The natural inference is that they might be sold, and if sold, that they must be sold for not less than their "par value." When bonds are issued in aid of a railroad, an exchange at par for stock of the railroad is a sale at par, under the decision of the Supreme Court of the United States. The desire of the people of Darlington was to aid in the construction of the railroad about to pass their town. The General Assembly gave them the authority to issue bonds for that purpose; the town authorities did issue them for that purpose, and the town not only accomplished its purpose, but also got stock in the railroad. I think, and so hold, that the town received an amount of stock equal to the par of the bonds then worth par, and part of which it sold for par in cash; and that under the decisions of the Supreme Court of the United States, the delivering of the amount of par in stock is a sale for par. *Myer* v. *Muscatine*, 1 Wall, 384; *Rogers* v. *Burlington*, 3 Wall, 654; *Montclair* v. *Ramsdell*, 107 U. S., 147. In the latter case, a statute authorized the town to borrow money, and invest it in stock of a railroad company, the bonds issued not to be disposed of for less than par. The bonds were exchanged by the town's commissioners for income bonds of the railway company at par. The Court said: "That exchange was a substantial compliance with the statute. * * * The road was constructed as contemplated, and the income bonds of the company remained in the hands of the commissioners, or some of them. Whether these bonds ultimately proved to be of any value, is of no consequence as between the town-

23—50

ship and the plaintiff." Defendant cited, in support of its position, *Scipio* v. *Wright*, 101 U. S., 665, and *Thompson* v. *Perrine*, 103 U. S., 806. The Court was controlled by a series of decisions in New York, in which State the case arose, and was unable to follow its own views. In *Montclair* v. *Ramsdell*, *supra*, where the statute was substantially the same as that of New York, the Court applied the views which it had announced in *Scipio* v. *Wright*, but could not then enforce. But, as intimated above, it is difficult to see what, if anything, this question of stock has to do with the case. The bonds, under the provisions of the charter, were issued to aid in the construction of the railroad. The charter did not require that stock or anything else should be given in exchange for the bonds. That, under the law, which the town was to receive as a consideration for its bonds, was to be the increased advantage which its citizens should receive from the new railroad running into the corporate limits of the town. If, in addition to this, it received stock, then that stock was extra, not required by law. That something was given beyond what was required, cannot invalidate the bonds, if all that was required was given.

In the "agreed statement of facts" this paragraph occurs: "The town acquired the tract of twenty-four acres by them agreed in the agreement of 22d April, 1890, to be conveyed to the Central Carolina Land and Improvement Company, and duly conveyed the same to the land and improvement company, having paid for the same, acquiring it in the sum of $4,200." As I understand this, the town acquired and paid $4,200 for this land, and gave it to the said company. The agreement of 22d April, 1890, referred to, reads that the town was "to give" this land to the company. If the town could, under its charter, "give" land to the company, "in aid" of the railroad, certainly it could "give" its bond for that purpose. I fail to see upon what grounds the town of Darlington can complain of these transactions. It made the agreement as to the bonds, more than par was raised on these bonds, and all of the money went to the construction

of this railroad.    It has received par for its bonds, in a railroad constructed and operated as it contracted for, which satisfies the charter provisions.    It has, in addition, and as a bonus, not required by the statute, received par for its bonds in the stock of the railroad.

Several of the most important issues in this action were raised in the case of the Atlantic Trust Company of New York *v.* Town of Darlington, heard and determined in the Courts of the United States.    See the decision of the Circuit Court of the United States, reported in the 63d Fed. Rep., 76, and that of the Circuit Court of Appeals, Fourth Circuit, reported in the 68th Fed. Rep., 849.    These decisions sustain the conclusions reached by this Court.    The printed arguments of the learned counsel in that cause have been submitted to me.    They are truly most able and exhaustive, covering every issue in admirable style.    It is due to these gentlemen, and a pleasure to the Court, to say, that these arguments, on both sides, have been of the greatest aid to this Court, and that, when deemed appropriate, their succinct and clear-cut statements of law and fact have in several instances been adopted by the Court.

Wherefore, it is ordered, adjudged, and decreed, that the plaintiff have judgment in its favor and against the defendant for the sum of $897.25, and the costs and disbursements of this action.

From this judgment the defendant appeals on the following exceptions:

First.  That his Honor erred in holding that the assessment by the town authorities of the town of Darlington was regular and according to law, and should have held that, inasmuch as it appeared from the testimony that the assessment by the town authorities in 1890 was higher than that made by the city and county officials, said assessment made by the town authorities was erroneous and irregular.

Second.  That his Honor should have held as a conclusion of law that, under the Constitution of the State of South

Carolina in force at the time of the creation of the causes of action sued on herein, the assessment authorized by such Constitution to be made for taxation for municipal purposes was the assessment as made by the proper authorities for the purposes of taxation for general city and county purposes, and was required to conform thereto; and that the assessment made under which the bonds constituting the said causes of action herein were issued being an assessment made at a higher rate and differing from the assessment made for the purpose of State and county taxation for the year in which the obligations sued on in this action were effected, was invalid, irregular, and null and void.

Third. That his Honor should have held as a conclusion of law (it appearing that the assessors had not made and reported the assessment within the time limited by the charter of the town of Darlington) that the assessment so made was irregular and invalid, and could not serve as a basis for the issuing of the bonds sued on in this action.

Fourth. That his Honor, the presiding Judge, erred in holding that in ascertaining the property of the town of Darlington subject to taxation for the purpose of authorizing the issue of bonded indebtedness, that the property of the Darlington Manufacturing Company should be included; whereas his Honor should have held that the meaning of the provision of the Constitution limiting and restricting the amount of the bonded indebtedness which could be incurred by any municipal corporation was that the sum should never exceed eight per centum of the property assessed for actual taxation for taxes to be used in supporting and paying the expenses of the town and its debts; and that the property of the Darlington Manufacturing Company being by a provision of law withdrawn, so far as any taxation thereupon was concerned, from any actual payment or participation in the burden of taxation, should have been excluded from the assessment in ascertaining the amount of the assessment authorizing the issue of the bonded indebtedness.

Fifth. That his Honor, the presiding Judge, erred in hold-

ing that the property of the Darlington Manufacturing Company was not exempt from taxation, and that it was assessable and taxable by the town of Darlington, and that any statement of the assessed valuation of the property of said town which omitted it, would be defective, incomplete, and erroneous; whereas his Honor should have held that, for the purpose of incurring a bonded indebtedness as provided and restricted by the Constitution of the State of South Carolina, the property of the Darlington Manufacturing Company was exempt from taxation, and was not assessable and taxable by the town of Darlington, and that any statement of the assessed valuation of the property of the said town upon which any bonded indebtedness should be incurred which included the property of the said Darlington Manufacturing Company, was defective, incomplete, and erroneous, and that the same should be excluded from such assessment.

Sixth. That his Honor erred in holding that the town received an amount of stock equal at par to the par of bonds then worth par, and that this was a compliance with the provisions of the charter of Darlington, that these bonds should not be sold at less than par; whereas his Honor should have held that the bonds in the present case were issued in exchange for stock, and not sold at all; but for stock which was of uncertain value, if not valueless, and, therefore, the bonds issued by the town had not been sold for par, as required by the statute.

Seventh. That his Honor should have held that the bonds in question had been issued at a time when eight per centum upon the assessed aggregate of the property in the town of Darlington assessed for the purpose of taxation was less than the aggregate of the issue of the bonds of which the bonds held by the plaintiff were a part; and that, therefore, the entire issue, including the bonds held by plaintiff, was irregular, invalid, null and void.

The respondent gave notice that it would move to sustain the judgment on the additional ground that, under the doc-

trine of "*communis error*," the issue of the bonds will be upheld.

*Messrs. Woods & Macfarlan* and *Mitchell & Smith*, for appellant, cite: *Only one assessment:* 45 S. C., 457; 14 Stat., 27, 410; Stats. 1872, part I., title III., chap. 14; 15 Stat., 731; Stat. 1882, part I., title III., chap. 11; 15 Stat., 756; Con. 1868, art. 8, sec. 9; art. 4, sec. 19; art. 2, sec. 33; art. 9, sec. 1; 5 Ohio St., 243; 72 N. C., 73; 75 N. C., 445; 93 N. C., 134; 16 S. C., 32; Con. 1868, art. 9, sec. 8. *Municipality not estopped:* 37 S. C., 554; 40 S. C., 26; 144 U. S., 188; 3 Wall, 654; 147 U. S., 235; 132 U. S., 346; 144 U. S., 182. *Par value means par value in money:* 26 Wend., 234; 18 At. R., 498.

*Messrs. Simons, Siegling & Cappelmann*, contra, cite: *Building railroads corporate purpose:* 30 S. C., 584, 604; 19 Wall, 666; 103 U. S., 562; 16 Wall, 692; 108 U. S., 187; 30 S. C., 1. *Act of 1889 amending charter Darlington not unconstitutional:* 6 Cranch, 87; 10 How., 402; 112 U. S., 261; 116 U. S., 252. *Assessment legal:* 37 S. C., 551; 40 S. C., 26; 111 U. S., 95; 147 U. S., 238; 102 U. S., 288; 45 Fed. R., 337. *Manufacturing capital not exempt from taxation:* 25 S. C., 260; 37 S. C., 551. *Bonds were sold for par:* 1 Wall, 384; 3 Wall, 634; 107 U. S., 147; 28 S. C., 135; 44 S. C., 486. *Communis error:* 37 S. C., 555; 18 S. C., 339.

Sept. 13, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This is an action to recover the amount of past due coupons, taken from certain bonds, held by the plaintiff, which purport to have been issued by the proper municipal authorities of the town of Darlington. Jury trial having been waived, the case was heard by his Honor, Judge Aldrich, upon an agreed statement of facts, set out in the "Case," and he rendered judgment in favor of the plaintiff for the amount of said coupons, together with interest thereon from their maturity. From this judgment defendant appeals upon the several exceptions which appear

in the record.    For a full understanding of the facts, and the questions presented for decision, the reporter will set out, in his report of the case, the agreed statement of facts, the decree of the Circuit Judge, and the exceptions thereto.

The defendant, while not denying the execution of the said bonds and coupons, bases its defense, substantially, upon the ground that, at the time these bonds were issued, the municipal authorities of the said town had no power to issue such bonds.    There is no doubt that a municipal corporation has no powers except such as are conferred upon it by legislative authority.    Our inquiry, therefore, is whether the legislature of the State has conferred upon the town of Darlington the power to issue these bonds.    The contract here in question having been entered into while the Constitution of 1868 was in force, its validity must be tested by the provisions of that Constitution, and the statutes passed in conformity thereto.    The provisions of that Constitution which affect this question are the following:  Sec. 33, of art. 2, which reads as follows: "All taxes upon property, real or personal, shall be laid upon the actual value of the property taxed, as the same shall be ascertained by an assessment made for the purpose of laying such tax."    Sec. 1, of art. 9, which declares that the General Assembly "shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal, and possessory, except mines and mining claims, the proceeds of which alone shall be taxed; and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."    Sec. 5 of the same article, which requires the General Assembly to enact laws for the exemption from taxation of certain classes of property, to wit: "public schools, colleges, and institutions of learning, all charitable institutions in the nature of asylums for the infirm, deaf and dumb, blind, idiotic and indigent persons, all public libraries, churches, and burying grounds."    Sec. 8 of

the same article, which declares that the corporate authorities of a town "may be vested with power to assess and collect taxes for corporate. purposes," and declares that "the General Assembly shall require that all the property, except that heretofore exempted, within the limits of municipal corporations, shall be taxed for the payment of debts contracted under authority of law."    Sec. 9 of the same article, which reads as follows: "The General Assembly shall provide for the incorporation and organization of cities and towns, and shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit."    And sec. 17 of the same article, which reads as follows: "Any bonded debt hereafter incurred by any county, municipal corporation or political division of this State shall never exceed eight per centum of the assessed value of all the taxable property therein."    This last mentioned section being an amendment adopted in 1884—18 Stat., 689.

From these constitutional provisions, it seems to me that the following conclusions must be deduced: 1st. That all the property in the State is liable to be taxed, except such as is specially exempted by sec. 5, of art. 9, or other provisions of the Constitution, and except such as could not be taxed without a violation of the provisions of the Constitution of the United States—which latter exception is not pertinent to our present inquiry.    2d. That *all* taxes, whether State or county or municipal, must be laid upon the *actual* value of the property taxed, as the same shall be ascertained by an assessment previously made for that purpose.    3d. That such assessment must be *uniform*—whether made for the purpose of State, county or municipal taxation.    4th. That the corporate authorities of a town may be vested with power to assess and collect taxes for corporate purposes; but in doing so, "the General Assembly shall require that all the property, except that heretofore exempted, within the limits of municipal corporations, shall be taxed for the payment of debts contracted under authority of law."    5th. That while there is no *express* provision authorizing the

General Assembly to invest the municipal authorities of a
town with power to borrow money and issue bonds to secure
the same, yet this is necessarily implied by the provisions
of secs. 9 and 17, of art. 9, above quoted.    6th.  That this
power to borrow money and issue bonds is limited by sec. 17,
of art. 9, providing that, after 1884, the bonded debt of any
municipal corporation "shall never exceed eight per centum
of the assessed value of all the taxable property therein."

These being the conclusions deducible from the provisions
of the Constitution, the next inquiry is, what powers have
the General Assembly undertaken to confer upon the cor-
poration of the town of Darlington in reference to creating
a bonded debt?    By the act of 1884—18 Stat., 923—the
mayor and aldermen of the town of Darlington were author-
ized to borrow money, and issue bonds or scrip therefor to
an amount not exceeding $5,000, provided, "that no bond
shall be sold for less than its par value."    That act, sec. 16,
also provided "That the said mayor and aldermen shall have
the power and authority to impose taxes each year for the
use of said town, that is to say, not exceeding fifty cents on
each $100 worth of real and personal property being in the
limits of said town, except the property of churches, chari-
table associations, and institutions of learning.    The value
of such real and personal property for the purposes of taxa-
tion shall be fixed and assessed as hereinafter provided."
In sec. 17, provision is made for the appointment annually
of three citizens of the town by the corporate authorities
"to assess the value of real estate for taxation," and pre-
scribing the time within which, and the manner in which,
such assessment shall be made.    Sec. 18 requires the own-
ers of personal property within the corporate limits to make
a return of such property to the town clerk within a pre-
scribed time, and if no such return is made within the time
prescribed, then it is made the duty of said clerk "to assess
such personal property for taxation, and his said assessment
shall be final."    The section also contains a provision that
if the mayor and aldermen are dissatisfied with the return

made by the owner, he may be required to come before them, "and fairly account for the personal property of such owner;" and if he neglects or refuses to do so, then his personal property shall be assessed for taxation by the mayor and aldermen at its true value. By the act of 1889—20 Stat., 503—sec. 16 of the foregoing act was amended by adding thereto the following provision: "That if the said mayor and aldermen should hereafter issue bonds for the purpose of aiding in the construction of railroads, then they may impose an additional tax to raise a sufficient amount to pay the interest on said bonds, which additional tax shall not exceed fifty cents on each $100 worth of real and personal property as above provided;" and sec. 29 of the act of 1884 was further amended by allowing an issue of bonds for the purpose of aiding in the construction of railroads to any amount, "and that no bond shall be sold for less than its par value." All of the other provisions of the act of 1884 remained unchanged. From this review of the several statutory provisions upon the subject, read in the light of the constitutional provisions above referred to, it is very manifest that the General Assembly intended to invest the corporate authorities of the town of Darlington with authority to issue bonds in aid of railroads, and also with power to lay assessments on the taxable property within the corporate limits of the said town for the purpose of levying taxes thereon to raise money to pay the interest on such bonds. It is true, that the act conferring the power to issue bonds does provide that the corporation may issue bonds in aid of railroads "to any amount," but in order to avoid any conflict with the constitutional provision limiting the amount of the bonded debt of any town to eight per centum of the assessed value of all the taxable property therein, that provision of the act must be qualified by such constitutional provision, and so read that the authority will be confined to the issue of bonds to any amount not exceeding the limit prescribed by the Constitution, upon the well settled principle that a statute will never be construed un-

constitutional when it can be in any possible way reconciled with the provisions of the Constitution.    *Fletcher* v. *Peck*, 6 Cranch, 87; *Butler* v. *Pennsylvania*, 10 How.; 415; besides many other authorities to the same effect, amongst which our own case of *Pelzer* v. *Campbell*, 15 S. C., 581, may be cited.

If this be so, then the next inquiry is whether the defendant corporation in issuing the bonds in question has exceeded the power thus legitimately conferred upon it.    The amount actually issued being conceded to be $73,000, the practical question is whether that amount exceeded the constitutional limit—"eight per centum of the assessed value of all the taxable property therein"—that is, within the municipality which has undertaken to incur the bonded debt in question.    To determine this question, two inquiries are presented: 1st. To what year assessment must reference be had?    2. Where, as in this case, two assessments have been made, differing in amount—one by the town assessors for the purposes of municipal taxation, and the other by the proper officers for the purpose of State and county taxation—which of these two assessments is to be adopted as the basis of the calculation?    As to the first of these questions, the bonds having been issued in April, 1890, it is clear that, under the case of *The State* v. *Cornwell*, 40 S. C., 26, the assessment of 1890, made in the early part of the year, is the one to which reference must be had, as that is the assessment made next preceding the issue of the bonds. By reference to the assessments made for that year it appears that the assessment made by the town assessors for the purposes of municipal taxation amounted to $1,019,685, while the assessment made for the purposes of State and county taxation amounted to $831,265—hence the vital importance of the second of these questions, as to which of these two assessments should be adopted. as the basis of the calculation; for if the former be adopted, it is clear that the amount of bonds issued did not exceed the constitutional limit, while if the latter be adopted, it is equally clear that such limit was exceeded.

It does not seem to me that this important question has ever been authoritatively decided in this State. The case of *Ross* v. *Kelly*, 45 S. C., 457, relied on for this purpose, only decides that *in the absence of any legislation* conferring upon a municipal corporation the power to make assessments of real estate, within the corporate limits, for the purpose of municipal taxation, it must adopt the assessment made by the proper officers for the purpose of State and county taxation, and cannot adopt an assessment made by an assessor appointed by the corporate authorities of such municipality. But the Court in that case does not decide, and could not properly have undertaken to decide, under the facts there presented, that where a municipal corporation has, as in this case, been invested with power to appoint assessors and provide for the assessment of property, within the corporate limits, for the purpose of municipal taxation, an assessment made by those appointed for that purpose by the municipal authorities is illegal. It seems to me, therefore, that the question, at least so far as authority is concerned, is still open. It is true that, in that case, one of the Justices of this Court—the writer of this opinion—while concurring in the conclusion reached by Mr. Justice Gary, who prepared the leading opinion, did go further and express the opinion, to which he still adheres, that, in accordance with the manifest scheme of the Constitution to secure *uniformity*, as well in the assessment as in the taxation of property, there could be but one lawful assessment of property, whether for State, county or municipal purposes, which must represent the *actual* value of the property; for otherwise the same property might be represented as having two actual values differing in amount—which, to use the mildest term, would be anomalous, if not absurd. This possibility has been converted into a fact in this case, as shown by the admissions in the agreed statement, as it there appears that the two assessments differed largely in amount. While, therefore, I do not think that this question has, heretofore, been authoritatively decided, yet, when it is

squarely presented, as it is now, I am still of the opinion that there can be but one lawful assessment of property for taxation, and that must, necessarily, be the assessment made by the proper officers for the purpose of State and county taxation, for it, certainly, could not be claimed that either the town of Darlington or any other municipal corporation has been or could be invested with authority to make assessment of property for the purpose of State and county taxation.

From this it would follow that the issue of the bonds here in question was without constitutional authority; but it seems to me that this is a case in which the maxim, *communis error facit jus*, may and should be applied for the protection of an innocent holder of negotiable paper. That maxim has been distinctly recognized and applied in the case of *Herndon* v. *Moore,* 18 S. C., 339, and there is greater reason for applying it here than in that case. In the first place, the point above considered was never raised, or even hinted at, in any case, so far as I am informed, prior to the case of *Ross* v. *Kelly, supra,* which was decided on the 25th of November, 1895, upwards of five years after the bonds here in question were issued. On the contrary, the General Assembly, from year to year, was passing acts empowering various municipal corporations to appoint their own assessors, and otherwise provide for the assessment of property for the purpose of municipal taxation, which, so far as appears, were acted upon without question by taxpayers or others. The defendant corporation itself had exercised and acted upon the authority thus supposed to be legally conferred, and had collected and disbursed, from year to year, taxes collected under assessments made by the town assessors, without question from any source. More than this, the Supreme Court itself has upon more than one occasion rendered decisions in which it was assumed, though the point was neither raised nor decided, that the assessment made by assessors appointed by the town authorities was the proper and lawful assessment to

which reference should be had in ascertaining whether the bonded debt of a town exceeded the constitutional limit. This was notably the case in *State* v. *Tolley*, 37 S. C., 521. In view of all this, it seems to me that this is eminently a case proper for the application of the maxim, *communis error facit jus;* and upon that ground I think the issue of bonds here in question should be sustained.

Appellant contends, however, that even if the assessment made by the town assessors could be adopted as the basis of the calculation, still the amount of bonds issued was in excess of the constitutional limit, as the assessed value of the property of the Darlington Manufacturing Company should be deducted from such assessment, and if so, the amount of bonds issued would exceed eight per centum of the assessed value of all the taxable property therein. I am at a loss to perceive any just ground for the deduction claimed. It is contended that this ground is to be found in the provisions of sub. 23 of sec. 169 of the Gen. Stat. 1882, which declares that any person who, since the 1st of January, 1872, has invested or may invest capital in the manufacture of cotton or other fabrics specified within this State, shall, for the period of ten years from the date of his investment, be entitled to receive from the State treasury a sum equal to his State taxes, and from the county treasurer the amount of his county taxes (not including, however, the two mills tax for school purposes), and from the treasurers of all municipal corporations the amount of his municipal taxes, "which shall be levied and collected upon the property or capital employed or invested directly in such manufactures or enterprises; not including herein the tax levied upon the land upon which the factories may be erected." While this section, or rather subdivision of this section, has been expressly repealed by the act of 1885—19 Stat., 333— yet as the repealing act contains a clause saving the rights of persons who had previously acquired the same under the provisions of the subdivision as originally enacted; and as it is conceded that the Darlington Manufacturing Company

had gone into operation prior to the passage of the repealing act, it may be conceded, for the purposes of this discussion, that the persons who invested their capital in said company may still claim the rights conferred by sub. 23 of sec. 169; but it does not by any means follow from this that the property of the Darlington Manufacturing Company is not taxable, and hence should not be included in the assessment. In the first place, if the General Assembly had undertaken, in express terms, to exempt the property of that company from taxation, the effort would have been futile, because in plain violation of the provisions of sec. 1 of art. 9, by which the General Assembly is required to provide by law for the assessment and taxation "of *all* property, real, personal and possessory," except such classes of property, specifically mentioned, as may be exempted by law from taxation; and it certainly cannot be pretended that the property of the Darlington Manufacturing Company falls within any of those classes. But, in addition to this, the General Assembly has not undertaken to exempt any of the property of the company from taxation. On the contrary, the express terms of the subdivision of the section above referred to plainly show that the property of the company should not only be assessed for taxation, for State, county, and municipal purposes, but also that the taxes imposed should be paid into the respective treasuries to which they belonged; and the only effect of this statutory provision was to allow those *who had paid* such taxes, to receive from the respective treasuries *a certain portion*—*not* the whole—of the taxes which they had paid; for the section expressly provides that they are not entitled to a return of the taxes paid on the land, nor to the two mill school tax. It is very manifest, therefore, that the section necessarily contemplated that such property should not only be assessed for taxation, but that taxes must be paid thereon, for otherwise the scheme of the statute could not possibly be carried out. The real and only purpose of this statutory provision was to give a *bonus* to those who had invested their capital in

manufacturing enterprises, for the purpose of encouraging such enterprises.    It seems to me, therefore, that there is no escape from the conclusion that the property of the Darlington Manufacturing Company was taxable property within the corporate limits of the said town, and was, therefore, properly and necessarily included in the assessed value of such property.

Again, it is contended that there is nothing in the Constitution which forbids the General Assembly, when it grants a charter to a municipal corporation, from exempting any classes of its property from taxation.    Even if this proposition were conceded, which we are not now prepared to do, a sufficient answer would be that there is no provision in the charter of the town of Darlington which exempts, or authorizes the municipal authorities to exempt, from taxation any species of property, except such as falls within the classes specified in the Constitution.    On the contrary, in sec. 16 of the act of 1884, *supra*, it is expressly provided: "That the said mayor and aldermen shall have the power and authority to impose taxes each year for the use of said town, that is to say, not exceeding fifty cents on *each* $100 worth of real and personal property being in the limits of said town, *except the property of churches, charitable associations, and institutions of learning.*" (Italics mine.)    This provision has never been altered or amended, as we have been able to discover, except by the provision in the act of 1889, above referred to, authorizing the imposition of an additional tax, not exceeding fifty cents on each $100 worth of property in the corporate limits, to pay the interest on bonds issued in aid of railroads.

All the other points made by this appeal are satisfactorily disposed of by what is said by the Circuit Judge in his decree, and I am content to rest my conclusions upon what is there said.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE concurs in the result only.

MR. JUSTICE GARY concurs in the result only.

MR. JUSTICE JONES.    I concur in the result only in this
case.    I agree entirely with the Circuit Judge, that under the
Constitution of 1868 the legislature had power to authorize
the city of Darlington to make an assessment of property
within its limits for municipal taxation, separate and dis-
tinct from the assessment for State and county purposes.
See the recent case of State *ex rel.* Southern Railway Com-
pany v. T. T. Talley, as city assessor of Columbia, *et al.*,
decided, but in which the opinion has not yet been filed.
This last mentioned case sustains an assessment made by
the authorities of the city of Columbia adversely to the
view presented in the opinion of the majority in the case at
bar.    In the case of *State* v. *Tolley*, 37 S. C., 552, bonds of
the city of Anderson were declared void, under sec. 17, art.
9, of the Constitution, for excessive issue, by *reference to
the last official assessment made by the municipal authorities
of Anderson.*    Why may not the bonds of the city of Darl-
ington be declared valid or invalid by reference to the same
standard?    It seems to me that the constitutionality of the
official city assessment was necessarily involved in *State* v.
*Tolley*, since it was made the *test* by which Anderson's
bonds were declared unconstitutional and void.    *Ross* v.
*Kelly*, 45 S. C., 457, decides that under sec. 33 of art. 2,
and secs 1, 6, 8, and 9 of art. 9, of the Constitution of 1868,
the tax officers of the city of Charleston, in the absence of
legislation conferring on such city authority to make assess-
ments for municipal purposes, must adopt, as the assessment
of the real property in the city for municipal taxation, the
same assessment as made for county and State taxes; and
mandamus is the proper remedy to compel them to do so.
But it is clearly pointed out in the opinion of Mr. Justice
Gary in Ross *v.* Kelly, that the legislature had power to
authorize a municipal assessment for municipal taxation.

But if the question is to be deemed an open one, still we
think that the clauses of the Constitution of 1868, quoted in

24—50

the opinion of the learned Chief Justice, do not warrant the construction which he places upon them. The deductions which he has made from the provisions cited should be qualified by these words, which are contained in sec. 8, art. 9: "*such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same.*" The Constitution of 1868 undoubtedly requires uniformity and equality of taxation, and by necessary inference uniformity and equality of assessment or valuation for that purpose. But the Courts generally agree that the principle of uniformity is maintained by making the tax bear equally and uniformly upon persons and property within a specified class or taxing district. A State tax is uniform when it bears equally upon all persons or property within the State, a county tax is uniform when it bears equally upon all persons or property within the county; likewise a city tax is uniform when it bears equally or uniformly upon persons or property within its territorial limits. In Cooley's Constitutional Limitations, p. 614, it is stated: "As to all taxation apportioned upon property, there must be taxing districts, and within these districts the rule of absolute uniformity must be applicable. A State tax is to be apportioned through the State, a county tax through the county, a city tax through the city. * * * Whenever it is made a requirement of a State Constitution that taxation shall be upon property according to value, such a requirement implies an assessment of valuation by public officers at such regular periods as shall be provided by law, and a taxation upon the basis of such assessment until the period arrives for making it anew. * * * Some other constitutions contain no provision upon this subject; but the necessity for valuation is nevertheless implied—there the mode of making it and the periods at which it shall be made are left to the legislative discretion." The object of the "uniformity" clauses of the Constitution of 1868 is to prevent discrimination. The uniformity must be coextensive with the territory to which the tax applies. There is no discrimination

and no want of uniformity when all persons and property bound by the tax are burdened equally. *Pine Grove Township* v. *Talcott*, 19 Wall., 666. In the case of *State* v. *Columbia*, 6 Rich., 404, the uniformity clause was considered. It was therein held that a tax on business and avocations fixing a different rate of taxation for each distinct business or avocation within the limits of the city of Columbia, was not in conflict with the provision requiring all taxes to be uniform with respect to persons and property within the jurisdiction of the body imposing the same. Everybody knows that there is no uniformity in the rate of taxation except as relates to a specified taxing district. A State tax is uniform throughout the State, but every county, many townships, every school district, every town or city, has its own special rate of taxation. But still there is uniformity in all these greatly differing rates of special taxation, since each has uniform application within the territory required to pay it. Now what has been said in reference to taxation applies with equal force to assessments or valuations for taxation, since the valuation is but a necessary prerequisite to a property tax. Therefore, an assessment under the Constitution of 1868, as the tax based on it, is uniform when it applies equally within the jurisdiction authorized to make it. The power to vest in a city the authority to collect a tax for corporate purposes of necessity includes the power to vest in a city the authority to make an assessment or valuation of property for that purpose. Therefore, we need not look into the Constitution of 1868 for any special and express grant to the legislature to authorize municipal assessments, such being a necessary implication from the grant of power to authorize municipal taxation, but we do find express provision on this subject in art. 9, sec. 1, in the language: "The General Assembly * * * shall prescribe such regulations as shall secure a just valuation for taxation of all property, &c." This provision, construed with the 8th section, expressly confers upon the legislature authority to vest a city with power to make a valuation of property for municipal

taxation.    The expression, "uniform and equal rate of assessment and taxation," as found in the first clause of sec. 1, art. 9, does not include the idea of a *valuation* of property for taxation except as such idea is necessarily involved in the authority to tax.    "Assessment" here, if it imports anything more than is involved in the word "taxation," means such special taxes or "assessments" as may be imposed on special localities or districts because of some special local benefit—such as, for example, special taxes or "assessments" for building a railroad or a court house, or paving streets, or water works, &c., as distinguished from taxation for general purposes.    Hence no argument for a single assessment of property for all kinds of taxation—State, county, school district, township or municipality—can be drawn from this clause.    Even, however, if the clause relates to the valuation of property (which we admit must by implication be uniform), uniformity of valuation is obtained, as said before, when the valuation is uniform, so far as concerns the taxing district called upon to pay the tax assessed upon such valuation.    My conclusion is that under the Constitution of 1868 the legislature had power to authorize a State assessment or valuation of property for a State tax, a county assessment or valuation for a county tax, a municipal assessment or valuation for a municipal tax.    A single assessment for all purposes might be more convenient and less expensive, but matters of convenience and expediency are wholly addressed to the legislature, but I think there is good reason for permitting municipal assessments.    It is more likely that under a city assessment less property will escape taxation, and the actual value of such as is assessed will be more nearly approached.    But this is out of the judicial path.    The question is one of power, not expediency.    The legislature conferred on Darlington authority to make an assessment of property for city taxation, and we have shown that the legislature had power to do so.    An act of the legislature should not be declared unconstitutional on doubtful grounds.    An act is not unconstitutional, unless it violates some express pro-

·vision of the Constitution, or some principle necessarily implied from the express provision.

The assessment by the town of Darlington being legal, then it follows that in applying sec. 17, art. 9, of the Constitution to ascertain if the bonds issued were in excess of eight per cent. "of the assessed value of all the taxable property therein," reference must be had to the last official assessment made by the town of Darlington preceding the issue of the bonds. This assessment investors had the right to rely on when they made inquiry as to the power of the city to issue the amount of bonds in question. *State* v. *Tolley, supra; State* v. *Cornwell*, 40 S. C., 26. Only in the absence of a legal city assessment should reference be had to the assessment of property within the city made for State and county purposes. *Ross* v. *Kelly, supra.*

Reference should be had to the legal assessment by the city to test whether the issue of bonds by the city is excessive, because the assessment and tax thereon is the source from which payment is to be derived. The charter of Darlington, which gives authority to issue the bonds and impose a tax for their payment, expressly provides how the value of the town property shall be ascertained for the purpose of such tax. 20 Stat., 503, cited in the Circuit decree.

These considerations induce me to prefer to affirm the Circuit decree, without resort to the exceptional and dangerous doctrine of *communis error facit jus.*

Even if I were wrong in the conclusion above announced, and the conclusion, that the bonds of the city of Darlington are void because in excess of the constitutional limit, is warranted, then I would not favor the application of the above rarely needed doctrine, which makes error right because the error is common. Perhaps this exceptional doctrine may be properly applied to prevent wide-spread unsettling of real estate titles, as in *Herndon* v. *Moore*, but I do not think this case calls for its application. If the bonds are in excess of the constitutional limit, they are void, and one beyond the curative power of legislature or court, and under such

view the Circuit decree should be reversed and the complaint dismissed.  But I think that the argument so strongly presented as a basis for the application of the doctrine, *communis error facit jus*, should rather persuade that the contemporaneous construction heretofore so generally placed upon acts authorizing municipal assessments, is the construction which the framers of the Constitution intended. *Simpson* v. *Willard*, 14 S. C., 195.