7530

SAVANNAH BUILDING SUPPLY CO. v. ATLANTIC COAST
LINE R. R. CO.

CONTRACTS—PUBLIC POLICY—NEGLIGENCE—SIDE TRACKS.—A RAILROAD
COMPANY in a contract with a private party for building and main-
taining an industrial sidetrack has the right to contract against loss
sustained by the other contracting party by fire originating from its
main line by negligence or otherwise, and such contract is not against
public policy.

Before SHIPP, J., Beaufort, September, 1909.  Affirmed.

Action by the Savannah Supply Co. and Irish American
Bank against Atlantic Coast Line R. R. Co.  The contract
referred to is:

"State of South Carolina, Beaufort County.

"This agreement, made and entered into this 31st day of
January, A. D. 1902, between the Charleston & Savannah
Railway Company, a corporation duly established under the
laws of the State of South Carolina, party of the first part,
and Savannah Building and Supply Company, of Beaufort
county, South Carolina, party of the second part.

"Witnesseth, That the party of the first part for and in
consideration of the sum of ($60.00) dollars, to it in hand
paid by the party of the second part, at and before the sign-
ing and delivery of these presents, the receipt whereof is
hereby acknowledged, will construct upon the terms herein-
after expressed, a sidetrack to its main line of road, com-
mencing at a point north 123 feet from the 25-mile post on
said railway and extending north 902 feet on the said com-
pany's right of way.  Said sidetrack to have two switches
and to be constructed under the direction of the roadway
department of said railway company.

"It is mutually understood and agreed that the party of
the second part is to grade and cross-tie the bed for said
sidetrack at their expense, and to pay all expenses and
labor of laying cross and switch ties, rail and switches, and

to pay all expense incurred from time to time in the maintenance of said track in safe and proper condition. The party of the first part to furnish the iron, splices and fastenings and switch; and when so constructed said party of the first part to permit said party of the second part to use the sidetrack for the space of one (1) year from the date of the completion thereof, at and for the sum of ($60.00) dollars per annum, to be paid on or before the 1st of January of each year during the continuance of this contract, the party of the first part reserving the right to use said sidetrack for its own purposes.

"It is further mutually understood and agreed that as, by reason of this contract, the stock and other property of said party of the second part (both as a firm and as individuals) may be exposed to greater liability in injury, and as a part of the consideration for the use of said sidetrack, said party of the second part will, and hereby does, release and discharge said railway company from any and all liability for any damage done to any of the stock or other property of the party of the second part, or done to the stock or property of any member of the said firm (the parties of the second part) by running of the locomotives or cars or other machinery of said railway company during the existence of the contract, and also to hold said railway company harmless for any and all damages that may result to stock or other property of third persons that may be in the employ, use, control or custody of said party of the second part, or to any stock that may be attracted to said sidetrack, by reason of the use of the same by said party of the second part.

"It is further mutually understood and agreed that said party of the first part shall not be liable for any goods, articles or property of any description that may be shipped by such party of the second part from said track until the car or cars containing such goods, articles or other property are taken from said sidetrack and into the train of said railway company for removal; nor shall said railway com-

pany be liable for any goods, articles or other property of any description received at said sidetrack after the car or cars containing the same is or are taken from the train of said railway company and placed on said sidetrack; nor shall said railway company be liable for any loss or damage by fire that may occur or be thought to occur by sparks from the locomotive of said railway company.

"It is further mutually understood and agreed that the said sidetrack shall not be used by said party of the second part for any other purpose than that of transporting and receiving the goods, merchandise and other property of the said party of the second part, without first obtaining permission in writing in each case of such shipment from the general freight agent of said railway company so to do; and should the party of the second part, without first obtaining such written permission, permit said sidetrack to be used for any other purpose that that of transporting and receiving the goods, merchandise and other property of the said party of the second part, then this agreement and all the rights of the party of the second part herein and hereunder shall at once cease and be at an end; and the party of the first part, in such event, to keep the payment made for the use of said sidetrack for the current year without abatement.

"And it is further mutually understood and agreed that before any goods, articles or other property of third persons shipped from any point shall be delivered at such side track, or shall be switched off on said sidetrack, or shall be placed on cars which may be loaded on said sidetrack, with the written permission of the general freight agent of said railway company, the party of the second part shall take from such third person a written acknowledgment that said property is to be received, loaded or shipped subject to the same terms and conditions as property of the party of the second part is received, loaded or shipped hereunder.

"It is further mutually understood and agreed that in addition to the provisions for terminating this contract as

hereinbefore expressed, the party of the first part shall have the right to terminate the same by giving the party of the second party thirty (30) days' notice of such intention so to do, whenever, from any cause whatever, such party of the first part shall consider that its interests require such termination and cancellation; and whenever this contract is terminated under the notice herein provided for, said party of the first part shall refund to said party of the second part the unearned rental for the year in which said notice is served.

"The party of the second part expressly covenants and agrees that it will reimburse the party of the first part, and pay to it in addition to any and all other moneys herein agreed to be paid, any and all such sums of money as the party of the first part may, at any time during the term or continuance of this contract, be required to pay for State, county or municipal taxes or assessments, on the sidetrack hereinabove described, which said payments shall be made to the said party of the first part at any time the said taxes or assessments become due thereon, and, in the event any such payment is not promptly made when demanded by the party of the first part, this contract and every right of the party of the second part herein, shall, at the option of the party of the first part, expire and determine, except to enable the party of the first part to collect such moneys as may be due thereunder, and to hold the party of the second part for all of the obligations by it herein undertaken.

"It is further mutually understood and agreed that whenever the yearly payment herein provided for is not paid on or before the day herein provided for such payment, all the rights and privileges of the said party of the second part under this contract, shall on that day cease and be of no effect.

"In witness whereof, the said C. & S. Railway Company has caused these presents to be signed by its general superintendent, and the said party of the second part has here-

unto set his hand and seal this 18th day of June, A. D. 1902.

> CHARLESTON & SAVANNAH RY. CO.,
> M. J. Wright, Superintendent (L. s.),
> SAVANNAH BUILDING SUPPLY CO.
> per A. M. Carmichael, Atty., (L. s.).

Signed, sealed and delivered by the party of first part in duplicate in presence of

> J. B. OLIVEROS, N. P. C. CO.

Signed, sealed and delivered by the party of the second part in duplicate in presence of

> C. B. McKENSIE."

The circuit decree is:

"This matter comes before me on a demurrer to the affirmative defense set up by the defendant in its answer. The complaint contains two causes of action. In the first cause of action it is alleged, in substance, that defendant operates a line of railroad extending from Charleston, S. C., to Savannah, Ga., known as the Charleston & Savannah Railroad; that on the 2d of April, 1908, the plaintiffs owned a brick plant situated near and adjacent to the defendant's right of way on the Charleston & Savannah Railroad near Hardeeville, S. C.; that on the date mentioned a portion of this plant, aggregating in value $10,761.00 was destroyed by fire alleged to have been communicated by a through passenger train being operated over defendant's main line at that point; and that by reason of this alleged destruction of plaintiff's property by fire, defendant became liable to plaintiffs by reason of the provisions of section 2135, volume I, of the Code of Laws of South Carolina of 1902. The second cause of action contains the same allegations as the first, but in addition alleges that the fire was negligently communicated. Defendant in due time filed its answer, wherein it set up a general denial to each cause of action, and in addition an affirmative defense to each cause of action as follows:

" 'Alleges that heretofore, to wit: on the 31st day of January, 1902, the plaintiff, Savannah Building & Supply Company and the Charleston & Savannah Railway Company, the predecessor of the Atlantic Coast Line Railroad Company, the defendant herein, entered a written contract and agreement, executed on the 18th day of June, 1902, a copy of which is attached to this answer as a part thereof, and marked "Exhibit A," whereby in consideration of mutual covenants by the said parties, it was stipulated and agreed among other things, that the said Charleston & Savannah Railway Company should not be liable for any loss or damage by fire that might occur or be thought to occur by sparks from the locomotives of said railway company; that on the date of the fire alleged in the complaint herein, the said agreement so executed between the plaintiff, Savannah Building & Supply Company, and the Charleston & Savannah Railway Company, the predecessor of the defendant, was in existence and binding with full force and effect upon the plaintiffs to the benefit of the defendant, Atlantic Coast Line Railway Company, in all its terms of agreement, covenant and stipulation in respect to damage by fire occurring by sparks from locomotives as hereinbefore alleged; and the defendant alleges that the said agreement relieves it of any and all liability from damages on account of the fire alleged in the complaint; and defendant alleges that the plaintiff, Irish-American Bank, acquired any right held by it in the property alleged to be destroyed subsequent to the execution, and subject to the provisions of the said contract.'

"To this affirmative defense plaintiffs interposed a demurrer on the ground that it failed to state facts sufficient to constitute an answer, for the reasons:

1. "That as to the second cause of action the contract set up is inoperative, null and void as against public policy to release defendant from liability for fires negligently communicated from an engine on the main line.

2. "That as to the first cause of action the contract set up is inoperative, null and void as against public policy to release defendant from liability for fires communicated in violation of the statute by an engine on the main line.

3. "That as to both the first and second causes of action the contract set up does not purport to release defendant from liability for fires communicated from the main line, but only from fires set out by engines operated upon and in connection with the industrial sidetrack referred to in the contract.

"The cause was fully before me, counsel for each side citing practically the same authorities. I have given the case mature deliberation and have carefully considered the authorities bearing thereon, and after so doing am of the opinion that the defense attacked is good and the demurrer thereto must be overruled.

"The reason for this ruling I shall now briefly state:

"In the first and second grounds of demurrer it is contended that it would be against public policy to hold valid this contract exempting the defendant from liability for negligent or statutory burning of the plaintiff's property.

"Examination of the contract shows that the railroad company agreed to construct for the Savannah Building & Supply Company, upon the terms thereinafter expressed, 'a sidetrack to its main line of road * * * and extending north 902 feet on the said company's right of way.' One of the terms thereinafter expressed was that the railway company would not be 'liable for any loss or damage by fire that may occur or be thought to occur by sparks from the locomotives of said railway company.'

"It is to be borne in mind that contracts between parties *sui juris* are not lightly to be set aside on the ground of contravention of public policy, but in every case it must be shown that they are in fact detrimental to the public.

"*Sturgiss* v. *A. C. L. R. Co.,* 80 S. C., 167; *Insurance Co.* v. *R. Co.,* 77 S. C., 467. As was said by the Supreme Court

of the United States in *Baltimore etc. R. Co.,* v. *Voight,*
176 U. S., 505, 44 L. Ed., 564:

" 'The right of private contract is no small part of the
liberty of the citizens, and that the usual and most important
functions of courts of justice is rather to maintain and
enforce contracts than to enable parties thereto to escape
from their obligations on the pretext of public policy.'

"The courts universally hold that a sound public policy
forbids common carriers to enter into contracts exempting
them from liability for acts of future negligence; but this
principle, as I view it, has no application here.

"It was well settled that a railroad company's right of
way is its own private property, and that it cannot be used
by other parties without the railroad company's consent
*Missouri etc. R. Co.,* v. *Nebraska,* 164 U. S., 403, 41 L.
Ed., 489: *Mays* v. *S. A. L. R. Co.,* 75 S. C., 455.

"Under this principle it is clear that the plaintiff, Savan-
nah Building & Supply Company could not, as a matter of
right have forced the railroad company to build the side-
track in question, but could only have obtained it by virtue
of a contract.

"As this would be a contract in its private as distinguished
from its public capacity, the railroad company, just as an
individual, would have the right to impose such terms as
it might see fit in order to guard against the increased
hazards that it would be subjected to by reason of the con-
struction of such sidetrack. It cannot be doubted that an
individual can make such a contract, and logically a railroad
company must be held to have the same power when con-
tracting in a similar capacity.

"This brings the case squarely within the reasoning of
the recent case of *Insurance Co.* v. *R. Co.,* 77 S. C., 467,
where this language is used:

" 'Now it is contended that notwithstanding this express
stipulation, the cotton was on defendant's right of way by
its consent, before it was tendered for shipment. We can-

not think so.   Millet & Company, and those in privity with
them, should be estopped to assert a fact which is contrary
to their agreement, that until tendered for shipment the cot-
ton remains upon the right of way without defendant's con-
sent.   It is said that such an agreement is void on the ground
of public policy.   As it subserves a very high public policy
to enforce contracts between parties *sui juris,* courts should
not nullify contracts as against public policy, unless the case
is free from all reasonable doubt.   The rule is that "a con-
tract is not void as against public policy, unless it is injur-
ious to the interest of the public or contravenes some estab-
lished interest of society."   What interest of the public is
injuriously affected by the agreement in question?   Mil-
let & Company had no right as a member of the public to
place cotton on defendant's premises, unless tendered for
shipment, except by agreement with defendant, and defend-
ant owed no duty to the public or to Millet & Company to
allow cotton to be placed on its right of way except for
shipment.

   " 'A different question would be present if Millet & Com-
pany had the right as a member of the public to place cotton
on defendant's right of way, independent of an agreement.
The status of the cotton on the right of way being fixed by
the agreement alone, must be determined by the agreement
alone.   If it be true that the cotton was on defendant's
premises by its consent or condition, the owner cannot cling
to the consent and repudiate the condition upon which it
was given, for that would be like a consent obtained by
fraud or deception which is no consent.

   " 'The authorities generally hold, that a contract by a
railroad corporation is not against public policy, because
it exempts from liability for fires, even negligently com-
municated by its agents or defective instrumentalities to
property placed by the owner upon railroad premises, not
as a patron dealing with the company as a common carrier,
but by virtue of the specific agreement.'

27—85

"Plaintiff's right to this sidetrack being fixed by the contract alone, must be determined by the contract alone; and since one of the conditions under which the privilege was granted was exemption from liability for fire, the plaintiff cannot be heard now to repudiate this condition upon which the privilege was granted; and whether the fire originated on the sidetrack or on the main line, the result would be the same, provided the contract is sufficiently broad to cover both cases.

"These two grounds or demurrer, are, therefore, overruled.

"In their third ground of demurrer, plaintiffs take the position that the contract here set up is not a defense to fires communicated from the main line, but only to fires originating on the sidetrack.

"In his argument, plaintiff's counsel admits that the contract set up would be a defense to a fire originating on the sidetrack, but insists that it would not be to a fire originating from an engine on the main line. I cannot accept this view. It seems to me that in entering into this contract, the parties had in view the increased risks the railroad company would incur by reason of thus connecting a brick plant with its main line, and that the railroad company gave its consent for this connection on the ground that it would not be liable for any damage by fire to plaintiff's property so connected, and it is certainly to be supposed that protection was being sought against the hazard of a fire from the main line, which is infinitely greater than that from the sidetrack.

"The language of the contract is:

" 'It is further mutually understood and agreed that * * * said railroad company shall not be liable for any loss or damage by fire that may occur or be thought to occur by sparks from the locomotive of said railway company.'

"This language is certainly sufficiently broad to cover fires originating from engines on the main line, as well as

on the sidetrack; and I so hold.   It follows that this ground
of demurrer must be likewise overruled.

"It is, therefore, ordered, adjudged and decreed, that the
plaintiff's demurrer interposed to affirmative defense set
up against each cause of action stated in the complaint, be
and the same is hereby, overruled.   Let the clerk notify
the attorneys interested of the filing of this order."

The plaintiffs appeal on the following exceptions:

First. "The appellants except that his Honor erred in
not sustaining plaintiff's first ground of demurrer, which
was as follows: 'As to the second defense to the second
cause of action of the complaint, plaintiffs allege that the
said defense does not state facts sufficient to constitute an
answer.   In that it is submitted that the contract set up in
said defense and upon which said defense is based is inoper-
ative, null and void, as against public policy, to release the
defendant from liability for damages for injury to and the
destruction of plaintiff's property caused, as alleged in the
second cause of action in the complaint, by fires negligently
set out in the operation of an engine of the defendant com-
pany upon the main line of defendant's railway.'

"It is submitted that his Honor, the presiding Judge,
should have held that the contract set up in the answer, as
the basis of and as a part of the second defense to the
second cause of action, was inoperative, null and void, as
against public policy, to release the defendant from liability
for damages for injury to and destruction of the plaintiff's
property caused by fires negligently set out in the operation
of an engine of the defendant company upon the main line
of its railway, and that the presiding Judge should have sus-
tained said first ground of demurrer and dismissed said com-
plaint, and that he erred in not so doing.

Second. "Plaintiffs except that his Honor erred in not
sustaining plaintiff's second ground of demurrer, which
was as follows:  'As to the second defense to the first cause
of action of the complaint, plaintiffs allege that said defense

does not state facts sufficient to constitute an answer to the first cause of action stated in the complaint.'

"In that it is submitted that the contract set out in the defense in question, and upon which it is based, is inoperative, null and void, as against public policy, to release defendant from liability for damages for the injury of or the destruction of plaintiff's property caused by fires, as is alleged in the first cause of action in the complaint, communicated to the property of the plaintiffs in the operation of an engine of the defendant company upon the main line of defendant's railway.

"It is submitted that his Honor, the presiding Judge, should have held that the contract set up in the answer, as the basis of and as a part of the second defense to the second cause of action, was inoperative, null and void, as against public policy, to release the defendant from liability for damages for injury to or the destruction of plaintiff's property caused by fires communicated to the property of the plaintiff in the operation of an engine of the defendant company upon the main line of its railway, and that the presiding Judge should have sustained said second ground of demurrer and dismissed said second defense, and that he erred in not so doing.

Third. "Plaintiff excepts that his Honor, the presiding Judge, erred in not sustaining plaintiff's third ground of demurrer, which is as follows: 'As to both the second and to the first cause of action and the second defense to the second cause of action, plaintiff alleges that said defenses do not state facts sufficient to constitute an answer to either of the causes of action set out in the complaint. In that the contract set out in both of said defenses does not operate to, nor purport to operate to release defendant from liability for fires set out in any manner, * * * whether negligently or not * * * by the engines of the defendant company operated on the main line of the defendant company's railway, but simply releases defendant from liability from fires set

out by engines operated upon and in connection with the industrial sidetrack referred to in said contract.    Hence, it is submitted that said contract in no way operates to bar the recovery of damages caused by fires set out, as alleged in the complaint, by engines operated upon the main line.'

"It is submitted that his Honor, the presiding Judge, should have held that the contract set up in the answer, as the basis of and as a part of the second defense to the sec-first cause of action, and the second defense to the second cause of action, did not operate to, nor purport to operate to release the defendant from liability for damages from fires set out in any manner, whether negligently or not, by engines of the defendant company operated on the main line of the defendant company's railway, but simply released defendant from liability from fires set out by engines operated upon and in connection with the industrial sidetrack referred to in said contract, and that the presiding Judge should have sustained said ground or demurrer, and dismissed both of the aforesaid defenses, and that he erred in not so doing.

Fourth. "Plaintiff excepts that in considering the first and second grounds of demurrer, after laying down the principle that 'The railroad company, just as an individual, would have the right to impose such terms as it might see fit in order to guard against the increased hazards that he would be subjected to, by reason of the construction of said sidetrack,' and after invoking the doctrine of the case of the *Insurance Co.,* v. *R. R. Co.,* 77 S. C., 467, his Honor, the presiding Judge, erred in applying these principles to the present case for the reasons that

(a) "It does not appear from the pleadings herein and is not a fact that the increased risk arising out of the construction of the sidetrack in question was the danger of the destruction of the plaintiff's plant from a spark emitted by an engine operated on the defendant's main line of track, but was simply the increased risk arising from sparks

omitted by engines operated upon the new industrial side-track which was to be constructed under the terms of the contract in question.

(b) "It does not appear from the pleadings, and is not a fact that the property destroyed was 'placed by the owner upon the railroad premises, * * * but by virtue of the special agreement' set up as the basis of the affirmative defense.

Fifth. "Plaintiff excepts that in considering the third ground of demurrer his Honor, after announcing that, 'It seems to me that in entering into this contract the parties had in view the increased risks the railroad company would incur by reason of thus connecting a brick plant with its main line,' erred in applying this principle to the present case, for the reason that

"It does not appear from the pleadings herein and is not a fact that the increased risk arising out of the construction of the sidetrack in question was the danger of the destruction of the plaintiff's plant from a spark emitted by an engine operated on the defendant's main line, but was simply the increased risk arising from sparks emitted by engines operating upon the new industrial sidetrack which was to be constructed under the terms of the contract in question."

*Messrs. Hendersons* and *M. M. Reynolds,* for appellants. *Messrs. Hendersons* cite: *Contract with employee against negligence is void:* 55 S. C., 174; 75 S. C., 170; 80 S. C., 167. *Railway may not contract generally to avoid result of its own negligence:* 55 S. C., 174; 75 S. C., 170; 80 S. C., 167; 26 S. C., 258; 38 S. C., 55; 57 A. & E. R. Ca., 59; 56 A. & E. R. Ca., 100. *Additional hazard:* 70 Fed. R., 201; Elliott on R. R., sec. 1236; 99 Am. St. R., 313; 79 S. C., 469; 83 S. C., 530; 26 A. & E. R. Ca., 550; 33 A. & E. R. Ca., 137; 5 A. & E. R. Ca., 26; 176 U. S., 498; 86 S. R. 224; 86 A. S. R., 224. *Contract invalid against the stautory cause of action:* 76 S. C., 101; 13 Wall., 306.

*Messrs. P. A. Willcox, Henry E. Davis* and *Lucian W. McLemore,* contra, cite: *Contract is one which the railroad company can make in protection of its rights:* 77 S. C., 467; 75 S. C., 455; 164 U. S., 403; 80 S. C., 185; 50 Am. St. R., 17; 97 N. W., 721; 175 U. S., 91; 99 Am. St. R., 313; 24 L. R. A., 647; 70 L. R. A., 930; 176 U. S., 505.

April 1, 1910. The opinion of the Court was delivered by

Mr. Justice Woods. The questions made by this appeal were discussed and decided adversely to the position taken by appellant in *Mayfield* v. *Southern Railway Company, infra,* 165.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.