14926

GENTRY v. TAYLOR *ET AL.*

(5 S. E. (2d), 857)

June, 1939.

*Mr. Jennings L. Thompson* for petitioner,

*Mr. Donald Russell* for respondents.

July 28, 1939.

*Per Curiam.*

This is a taxpayer's suit, brought by permission in the original jurisdiction of the Court, to enjoin the county board of Spartanburg County from issuing and selling county bonds pursuant to the terms of an act passed by the General Assembly at its 1938 session (40 Stat. at Large, 2790).

The facts are not in dispute. The city of Spartanburg owns an airport located just without its corporate limits. The act authorizes the county board, subject to the approval thereof in advance by a majority of the qualified electors of the county, at an election to be held to determine such matter, to issue and sell county bonds to aid in the enlargement of this airport, pledges the full faith and credit of the county as security for the payment of the bonds, with interest, as they mature, and directs that taxes sufficient for such payment be levied annually upon the taxable property in Spartanburg County. An election, as provided for, has been held, in which a majority of the electors voting favored bonds.

The petitioner challenges the constitutionality of the act, and alleges that any bonds issued thereunder would be invalid and any taxes levied for their payment would be illegal, in that:

"(a) Said bonds and the tax to be levied therefor are not for any ordinary county purpose or for any other purpose for which the General Assembly is empowered to authorize any county to levy a tax or issue bonds under the provisions of Article 10, Section 6, of the State Constitution of 1895;

"(b) The Memorial Airport of Spartanburg, which is to be improved with the funds derived from said bonds and the tax to be levied therefor, in conjunction with an estimated expenditure of $41,000 to be furnished by the city of Spartanburg and $300,000 to be furnished by the United States Government, is a public airport located in Spartanburg County and owned by the city of Spartanburg and not by Spartanburg County, except in so far as the city of Spartanburg may be an integral part of the County of Spartanburg and the State of South Carolina;

"(c) Said bonds and the tax to be levied therefor are in violation of Article 10, Section 6, of the State Constitution of 1895; and

"(d) Said bonds and the tax to be levied therefor are not authorized by any other constitutional or legal authority."

The provision of the Constitution referred to is as follows: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, county officers, and for litigation, quarantine and court expenses, and for ordinary county purposes, to support paupers, and pay past indebtedness." Section 6 of Article X.

In reply to contentions (a) and (c) of the petitioner, the respondents say that the Legislature in its enactment of certain laws (39 Stat. at Large, 447; 40 Stat. at Large, 466) "has indicated in no uncertain terms its conviction that the expenditure of public funds in the construction of an airport is within those public purposes contemplated by Section 6, Article X, Constitution of 1895";

and that "the question of whether an act is for a public purpose is primarily one for the Legislature; and this court will not interfere unless the determination by that body is clearly wrong." *Park v. Greenwood County,* 174 S. C., 35, 176 S. E., 870, 872.

The mere fact, however, that a project is denominated by the Legislature as a "public purpose" is not within itself sufficient to cure the unconstitutionality of an act authorizing the issuance of bonds by a county for the promotion of such project. In the cases cited and relied on by the respondents, to which we will presently refer, the act under which bonds were proposed to be issued (38 Stat. at Large, 411) did not pledge the full faith and credit of the county, or other borrower, for the payment thereof. The projects authorized by the act were self-liquidating, and the bonds sought to be issued therefore were held by this Court not to be debts in a constitutional sense.

In *Poulnot v. Cantwell,* 129 S. C., 171, 123 S. E., 651, Section 6 of Article X of the Constitution was invoked as a basis for the contention that a joint resolution of the General Assembly, authorizing the issuance of bonds and the levying of a tax by Charleston County for the construction of wharves and boats, and for the operation of a public ferry in that county, was unconstitutional. Mr. Justice Marion, who wrote the opinion of the Court, pointed out that due to the physical geography of the county, the territory of which is traversed by rivers, and divided or separated by bodies of water, expenditures of money for roads and bridges might be rendered partially or wholly ineffective if no provision should be made for ferries, either as a part of the county system of roads, or as a part of the "ordinary" expenses of the county. The effect of the decision was that a public ferry, due to the conditions named, was and is a part of the road system of Charleston County, and that the bonded indebtedness authorized, therefore, was a valid debt in a constitutional sense, whether considered as incurred for the building of public roads or as an "ordinary" county ex-

pense. In the circumstances detailed, the decision was clearly sound on either ground.

In *Park v. Greenwood County, supra,* the only specific reference made to Section 6 of Article X of the Constitution was whether the revenue bonds there sought to be issued would constitute a debt within the constitutional limitations. The Court, citing several of its former decisions, pointed out that the bonds did not carry the general credit of the borrower, and that under no circumstances could the borrower, the county in that case, be made to answer for any such obligations.

In the case at the bar, the act which authorizes their issuance specifically declares, as we have indicated, that the bonds shall be obligations of Spartanburg County, and pledges the full faith and credit of the county for the payment thereof and directs the levy of an annual tax for that purpose, there being no other method or plan provided for the payment of such an indebtedness. The respondents, therefore, being squarely faced with the above mentioned provision of the Constitution, are asking the Court, as we gather from their contention, to declare that the proposed bonds, when issued and sold, will be a valid bonded indebtedness of the county, upon the ground that the expenditure contemplated is for an ordinary county purpose, such as is provided for by Section 6 of Article X of the Constitution; there being no contention that a project of this sort, the extension and improvement of an airport, is covered by or comes within any of the other exceptions mentioned in that section.

In 46 C. J. 1132, the word "ordinary," in its adjectival use, is thus defined: "According to established order; accustomed; common; common in recurrence; conforming to general order; customary; established; methodical; normal; often recurring; regular; settled; usual; that which has been established, and is customary." Webster: "Belonging to what is usual; having or taking its place according to the customary occurrence or procedure; usual; normal."

It seems to the Court, if the word "ordinary" is given its commonly accepted meaning, that it would be going far beyond the intendment of the Constitution to hold that the issuance of the proposed bonds would be for "ordinary county purposes." We think that the natural and logical construction of this provision of the Constitution leads to the inevitable conclusion that the issuance of bonds by the county for the extension and improvement of an airport, as is here proposed to be done, would not be for an ordinary county purpose, but would be altogether contrary to the usual and accepted definitions of the word "ordinary." See authorities above cited.

It is suggested, however, that airplane service is re- garded as essential to modern life, or is rapidly be- coming so, and that to provide adequately for such service will be in the public interest and subserve a public purpose. Conceding this to be true, the answer is that it is not the province of this Court to change the clear intend- ment of any provision of the Constitution by construing the language used so as to give it a different meaning from that which it clearly imports; and even if the Legislature has indicated or established a policy favorable to airports, it is bound by constitutional limitations, and cannot exceed them. We may here add that if the provisions of the Con- stitution are not broad enough or sufficiently elastic to meet the needs or requirements of present-day life, that instru- ment itself provides how this may be done, if the people so will.

The respondents cite several decisions from other juris- dictions in support of their contentions, all of which we have read with interest and care. These decisions, however, while they generally uphold contributions by a county for the improvement of airports, are not in point here. The primary question before the Courts in those cases was whether or not the purpose was a public one, and in none of them, so far as the opinions disclose, was such a constitutional question involved as is here presented.

Upon full and mature consideration of the entire matter, which is an important one, we are constrained to hold that the act of the Legislature (40 Stat. at Large, 2790), under the authority of which the proposed county bonds are sought to be issued and sold by the respondents, contravenes Section 6 of Article X of the State Constitution, and for that reason is held to be invalid. In reaching this conclusion, the Court has kept in mind and applied the well-settled rule that before an act of the Legislature, a co-ordinate branch of the Government, is declared unconstitutional, its invalidity must be shown beyond a reasonable doubt. This is such a case. See *Wingfield v. South Carolina Tax Commission,* 147 S. C., 116, 144 S. E., .846; *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269, and cases there cited.

In view of our disposition of the first question, as above set forth, consideration of other contentions is deemed unnecessary.

The judgment of the Court is:

(1) That the prayer of the petitioner be, and hereby is, granted.

(2) That the respondents herein, A. B. Taylor, J. R. Mallory and R. F. Bagwell, as members of the County Board of Spartanburg County, be, and hereby are, permanently restrained and enjoined from issuing or selling, by virtue of any authority attempted to be vested in them by the said unconstitutional act, the said proposed bonds, or any bonds of the said County of Spartanburg.

And it is so ordered.

MR. JUSTICE CARTER did not participate on account of illness.