[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 283 
The order of Judge Lide follows:
J. Frank Byrd, the petitioner herein, a resident, citizen and taxpayer of the County of Georgetown seeks an order from the Court requiring Charles W. Lawrimore, Treasurer of Georgetown County, to perform his alleged official duty as such Treasurer by collecting from International Paper Company county taxes claimed to be payable for the years 1942 to 1946, inclusive, aggregating $403,950.53.
Although not formally named as a party to the proceeding, petitioner has had the petition and the rule to show cause granted thereon served on International Paper Company as well as on the respondent, Charles W. Lawrimore, Treasurer of Georgetown County. Both the named respondent and International Paper Company have filed a return, and it is understood that both of them are before the Court just as if they had been named as respondents.
The petition alleges that International Paper Company is a corporation doing business for gain and special benefit to the owners of its capital stock, that under Article 8, Section 8, of the Constitution it was entitled to claim exemption from all county taxes except for school purposes for the years 1937 to 1941, both inclusive, a period of five years, which exemption was granted, and that it also claims exemption for the years 1942 to 1946, inclusive, an additional period of five years, under a joint resolution of the General *Page 285 
Assembly of South Carolina passed in 1937, April 27, Acts 1937, No. 231, 40 St. at Large, p. 356. It is further alleged that the joint resolution of 1937 under which the exemption is claimed is null and void because in conflict with Article I, Sections 17 and 29, Article 8, Section 8, and Article 10, Sections 1, 4 and 5 of the Constitution of South Carolina, and with Section 2835, Code of 1942, and for the further reason that it is so indefinite as to be impossible of administration.
The return of Charles W. Lawrimore, as Treasurer of Georgetown County, and the return of International Paper Company each denies that it is the duty of the Treasurer of Georgetown County to collect the County taxes from International Paper Company for the years 1942 and 1946, inclusive, referred to in the petition, and in substance alleges that International Paper Company has been properly exempted from the payment of these taxes by the joint resolution of 1937 referred to in the petition and that such resolution was in all respects valid and effective.
The return of International Paper Company also contends that the proceedings herein are improperly brought in that the State is not made a party.Runion v. Latimer, 6 S.C. 126, may possibly lend some color to this contention, but the much later case of Milster v.City of Spartanburg, 68 S.C. 26, 46 S.E. 539, seems to hold to the contrary, and this contention of International Paper Company will, therefore, be overruled at this time and given no further consideration.
Neither return was in any way traversed by the petitioner other than the allegations in each of them to the effect that the location of the plant of International Paper Company in Georgetown County was beneficial to the County. The remaining allegations of the returns must, therefore, be accepted as true. Bryan v. AuditingBoard, 94 S.C. 43, 77 S.E. 736; Pendarvis v. City ofOrangeburg, 157 S.C. 496, 154 S.E. 756. *Page 286 
Although petitioner has not traversed the allegations of the returns other than as above stated, yet he has filed a motion to strike out certain allegations of the returns relating to the inducements leading up to the location of the plant of International Paper Company in Georgetown County and the benefits derived therefrom by the County. This motion is based on the ground that such allegations are irrelevant and redundant. It does not seem, however, that these allegations, in substance all relating to the enhancement of the public interests by the location of the plant in Georgetown County, are entirely without relevancy, and petitioner's motion to strike out will, therefore, be refused.
The joint resolution under which the exemption is claimed is as follows:
"Section 1. Certain manufacturing enterprises exempt from county taxes, Charleston, Georgetown, and York Counties. — Be it resolved by the General Assembly of the State of South Carolina: That any and all manufacturing enterprises hereafter locating in either Charleston or Georgetown or York Counties, or any manufacturing enterprise recently located in either one of the said counties, and the plant or plants of which are in process of construction, and the capital stock of which is not less than Three Hundred Thousand ($300,000.00) Dollars, be, and the same are hereby, exempt from the payment of county taxes for a period of ten (10) years from this date; in the case of enterprises already located and now under construction, such exemption shall date from the commencement of the work of construction.
"§ 2. All Acts or parts of Acts; Joint Resolutions or parts of Joint Resolutions inconsistent with the purpose of this Joint Resolution be, and the same are, hereby repealed."
On the faith of the joint resolution of 1937 Southern Kraft Corporation erected and put into operation in Georgetown County a pulp and paper mill with a capacity of 450 tons of paper per day at an original cost of $8,140,000, *Page 287 
and International Paper Company subsequently succeeded to all property, rights, privileges, powers, franchises and other interests of Southern Kraft Corporation and has expended the further sum of $12,330,000 for additions and improvements to the plant since acquiring it. It is admitted that International Paper Company comes within the terms of the joint resolutions and is entitled to the exemption therein provided for, if it is a valid legislative enactment.
It is not apparent how this joint resolution of 1937 can in any respect be in conflict with Article I, Section 17, of the Constitution providing that private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made therefor, or with Article I, Section 29, providing that the provisions of the Constitution shall be taken to be mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms, or with Section 2835, Code of 1942, providing that contracts entered into with intent to evade payment of taxes or in fraud of the tax laws of the State are against public policy. Nor am I able to see anything so indefinite about the joint resolution as to render it impossible of administration. In fact, petitioner's contentions in none of these respects seem to be seriously pressed, and in any event I am of the opinion that they are without substantial substance.
The real weight of petitioner's attack upon the validity of the joint resolution under which the tax exemption is claimed is based on these propositions: That the General Assembly has no power to exempt property from County taxes except such as is granted by Article 8, Section 8, or by Article 10, Section 1 or 4, of the Constitution, that the property of International Paper Company does not come within any of the classes of property thereby exempted or permitted to be exempted, and that Article 10, Section 5, is an express mandate *Page 288 
requiring the property of International Paper Company to be taxed.
In Clarke v. South Carolina Public Service Authority,177 S.C. 427, 181 S.E. 481, 484, in discussing the rules by which the Court must be governed in considering the constitutionality of an act of the Legislature it is said:
"In determining this question it is to be observed that it is a well-settled rule in South Carolina that: A statute will, if possible, be construed so as to render it valid; that a legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond reasonable doubt; that every presumption will be made in favor of the constitutionality of a legislative enactment; that it will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution; that all reasonable presumptions must be made in favor of the validity of the Act; and that the Constitution of South Carolina is a limitation upon, rather than a grant of, legislative power.
And in the same case the Court also went on further to say:
"The General Assembly has a right to pass such legislation as in its judgment may seem beneficial to the state, and to create such agencies of government as may be necessary to carry out its purpose, unless expressly prohibited by the Constitution. To the Legislature of South Carolina, consisting of the House and Senate, is granted the legislative power by the Constitution of 1895, article 3, § 1, in this broad language: `The legislative power of this State shall be vested in two distinct branches, the one to be styled the "Senate" and the other the "House of Representatives," and both together the "General Assembly of the State of South Carolina."'
"Our courts have held that by the use of this language the people of the state vested the General Assembly with the *Page 289 
entire legislative power of the state, subject only to such restrictions upon and regulations of such power as were contained in the Constitution itself. It is the theory and intent of the Constitution of South Carolina that the powers vested in the General Assembly include all powers not specifically reserved by the Constitution. Massey v. Glenn, 106 S.C. 53,90 S.E. 321; State v. City Council of Aiken, 42 S.C. 222,20 S.E. 221, 26 L.R.A. 345; Mauldin v. City Councilof Greenville, 42 S.C. 293, 20 S.E. 842, 27 L.R.A. 284, 46 Am. St. Rep. 723; Cathcart v. City of Columbia,170 S.C. 362, 170 S.E. 435.
"This is well declared by Mr. Justice Stabler, now Chief Justice, in the case of Park v. Greenwood County, 174 S.C. 35,176 S.E. 870, 871, in the following language: `In the recent case of Heslep v. State Highway Department,171 S.C. 186, 171 S.E. 913, 915, the opinion was closed with this observation, pertinent here: "It has always been, and is now, the law that the General Assembly may enact any act it desires to pass, if such legislation is not expressly prohibited by the Constitution of this state or the Constitution of the United States. We find nothing in either of the Constitutions which prohibited the enactment of the law attacked in this case."'
"The general statement of the rule is that the powers of the General Assembly are plenary as to all matters of legislation unless limited by some provision of the Constitution.Waterloo School Dist. v. School District, 106 S.C. 292,91 S.E. 257; State v. Gossett, 117 S.C. 76, 108 S.E. 290, 16 A.L.R. 1299; Walpole v. Wall, 153 S.C. 106,149 S.E. 760."
The position of petitioner in relation to Article 8, Section 8, of the Constitution is that the specific exemptions therein contained exclude all other exemptions. I do not think that this position can be sustained, if as said in Clarke v. SouthCarolina Public Service Authority, supra, the Constitution *Page 290 
vested "the General Assembly with the entire legislative power of the state, subject only to such restrictions upon and regulations of such power as were contained in the Constitution itself," and if the theory and intent of the Constitution is "that the powers vested in the General Assembly include all powers not specifically reserved by the Constitution."
Article 8, Section 8, as originally adopted only contained the following: "Cities and towns may exempt from taxation, by general or special ordinance, except for school purposes, manufactories established within their limits for five consecutive years from the time of the establishment of such manufactories: Provided, That such ordinance shall be first ratified by a majority of such qualified electors of such city or town as shall vote at an election held for that purpose." There is certainly nothing in this prohibiting the exemption of manufacturing establishments from county taxes for a reasonable period of time, and in so far as Article 8, Section 8, as originally adopted was concerned there was no reason why the General Assembly could not exempt manufacturing establishments from county taxes. It is, therefore, evident that all the subsequent amendments to Article 8, Section 8, authorizing the General Assembly to grant exemptions were entirely superfluous, because the General Assembly already had the power, and the erroneous opinion that it was necessary to adopt these amendments in order to give any power obviously could not take away the power that already existed, particularly when the right to make such exemptions was elsewhere expressly recognized by Article 10, Section 1.
The relevant parts of Article 10, Section 1, 4 and 5, invoked by petitioner in his attack upon the joint resolution of 1937 are as follows: for a uniform and equal rate of assessment and taxation,
Section 1. "The General Assembly shall provide by law *Page 291 
and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory, except mines and mining claims, the products of which alone shall be taxed; and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes * * *."
Section 4. "There shall be exempted from taxation all County, township and municipal property used exclusively for public purposes and not for revenue, and the property of all schools, colleges and institutions of learning, all charitable institutions in the nature of asylums for the infirm, deaf and dumb, blind, idiotic and indigent persons, except where the profits of such institutions are applied to private uses; all public libraries, churches, parsonages and burying grounds; but property of associations and societies, although connected with charitable objects, shall not be exempt from State, County or municipal taxation * * *."
Section 5. "The corporate authorities of counties, townships, school districts, cities, towns and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. * * * And the General Assembly shall require that all the property, except that herein permitted to be exempted within the limits of municipal corporations, shall be taxed for corporate purposes and for the payment of debts contracted under authority of law. * * *"
It will be observed that Section 1 requires the General Assembly to provide by law for a uniform and equal rate of assessment and taxation of all property, except mines and mining claims, the products of which alone are to be taxed, and also except such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes. From this it is apparent that the right of the General Assembly to make laws exempting *Page 292 
property from taxation for municipal, educational, literary, scientific, religious or charitable purposes is expressly recognized by the Constitution itself, and if the exemption in this case is for any of these purposes it seems clear that the validity of the joint resolution of 1937 cannot be questioned. The exemption of the property described in Section 4 is made mandatory, and the General Assembly of course has no power to tax it at all, but this plainly does not prohibit the General Assembly from exercising its expressly conferred right to make laws exempting other property for the purposes stated in Section 1. Section 1 makes no mandatory exemption as to any particular class of property except mines and mining claims, leaving it to the Legislature to make exemptions by law for municipal, educational, literary, scientific, religious or charitable purposes. It is, therefore, necessary to inquire if the exemption under the joint resolution of 1937 is for a municipal purpose, it being readily apparent that it is not for an educational, literary, scientific, religious or charitable purpose.
The problem thus presented has been so clearly and definitely answered adversely to the contentions of petitioner in Duke Power Company v. Bell, County Treas., 156 S.C. 299,152 S.E. 865, 870, that it would seem only necessary to refer to that case, but it is so conclusive of the questions with which we are now concerned that extensive quotations therefrom seem justified. The exemption there claimed was under a joint resolution approved March 5, 1925, 34 Stat. at Large, 891, exempting manufactories desiring to locate in Lancaster and certain other counties from all county taxes except for school purposes for the period of five years from their establishment, and in the course of its consideration of the validity of the joint resolution, after setting forth the provisions of Article 10, Section 1, the Court said:
"That under this provision of the Constitution the power to exempt property from taxation for `municipal' and certain other named purposes is expressly reserved to the lawmaking *Page 293 
department of the Government is entirely clear. The exception written into this section of the Constitution, reserving to the General Assembly the power to exempt property from taxation for certain purposes, is as much a part of the fundamental law as the provision requiring the General Assembly to provide for a uniform and equal rate of assessment and taxation `of all property.' Our chief concern here, therefore, is with the proper construction and interpretation of the words municipal purposes as here used. In 42 C.J., p. 214, the term municipal purposes is thus defined:
"`Municipal Purposes. A term without any definite technical import, defined as a public or governmental purpose, as distinguished from a private purpose; a purpose intended to embrace some of the functions of the government, local or general.'
"The word municipal, as used in another section of the Constitution, to wit, section 11, art. 7, providing that the General Assembly `may make special provision for municipal government,' etc., has been held by our court to refer to and embrace the governmental affairs of counties. State v.Touchberry et al., 121 S.C. 5, 113 S.E. 345; [Carolina]Grocery Co. v. Burnet, 61 S.C. [205] 213, 214,39 S.E. 381, 58 L.R.A. 687; Carroll v. York, 109 S.C. 1,95 S.E. 121. Fortunately, however, the particular language of this section here under consideration has been very fully construed and interpreted by our Supreme Court in the case of Chester County v. White Bros. 70 S.C. 433,50 S.E. 28, 32. In that case the precise question involved was whether the General Assembly could exempt from State, county, and municipal taxes the bonds of a county in the hands of a purchaser. The Circuit Court (Judge Gage) held that such exemption was prohibited by sections 1 and 4 of article 10. The Supreme Court speaking through Mr. Justice Jones, in an exceedingly clear and able opinion, said:
"`The fundamental error of the circuit court is in holding that the phrase "municipal purposes," used in section 1, in *Page 294 
conjunction with property, means the same thing as "municipal property," used in section 4, and that the exemption might have been omitted from section 1, or section 4 might have been omitted altogether, and the same meaning accomplished as is compassed by the two sections. This method of construction violates the rule which requires that the language of a constitution should receive a natural and reasonable construction, and that different portions thereof should, if possible, receive a construction which would give some meaning to each of such provisions. The construction by the circuit court would strike from the constitution the provision in section 1, "and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes." The phrase, "as may be exempted by law," does not simply mean, "as may be exempted by section 4, art. 10, of the Constitution," but clearly includes such exemption as the Legislature may lawfully make for the purposes named. This provision of the Constitution implies that the Legislature has the power to exempt property from taxation for municipal or other specified purposes, provided the exemption is not expressly or impliedly prohibited by other portions of the Constitution. It is a well-established principle that the Legislature has all the power not denied it by the Constitution expressly or by necessary implication. Section 4, art. 10, is mandatory, and is self-executing, so that further legislation would not be necessary to exempt from taxation all property falling within the specified classes, and the Legislature would have no power to tax what is therein exempt. But this section, in so far as it exempts property, is not a limitation on the power of the Legislature to make further exemptions falling within the exceptions contained in section 1. Section 4 declares that the specified property shall be exempt, while section 1 permits legislative discretion in exempting other property not named in section 4, provided the exemption is for municipalpurposes or other purposes named. The Constitution does *Page 295 
not require that all property shall be taxed, but it only requires that all property not exempt under the Constitution, and not exempt by a valid act of the Legislature, shall be taxed. So that, whenever the right of the Legislature to exempt property from taxation is disputed, the question is whether such exemption is expressly or impliedly forbidden by the Constitution. If the exemption falls within the classes named in section 4, we need go no further. If the exemption does not fall within section 4, then we may inquire if it falls within the legislative discretion to make exemptions, implied in section 1. * * *'"
The Court then further went on to say:
"Under the foregoing decision it is not open to question, I think, that the term municipal purposes
as used in this section of the Constitution is the equivalent of, or fairly embraces, county purposes; that is, an exemption for county purposes is an exemption for municipal purposes if within the scope of the legitimate governmental purposes of a county for which the Legislature may provide by law. If so, our sole remaining inquiry is whether the exemption granted by this Statute is an exemption granted for a legitimate governmental purpose of the County of Lancaster. Since, in the absence of constitutional restriction, the power of the Legislature to exempt from taxation is as broad as its power to tax, and since under this provision of Section 1, Article X, the power of the Legislature to exempt from taxation for municipal purposes is expressly reserved, the Legislature's discretionary power to determine what is a municipal or county purpose is as broad as its discretionary power to determine any question of legislative or governmental policy. That it is within the legislative power to exempt from taxation manufactories, or manufacturing enterprises, as a matter of public or governmental policy, is well settled. At the time of the adoption of our Constitution of 1895, the policy of exempting property used in a manufacturing industry was more or less common among the *Page 296 
States of the American Union, See 26 R.C.L., 328, § 287. It was, indeed, a policy recognized and expressly approved and sanctioned in our fundamental law (section 8, art. 8, Constitution of 1895). The rationale of that policy is very well stated by the Rhode Island Court in the case of Craftsv. Ray, 22 R.I. 179, 46 A. 1043, 1045, 49 L.R.A. 604, holding that an exemption from taxation for ten (10) years of two private corporations on condition that they locate manufacturing property in a town was not unconstitutional. It is a matter of common knowledge that during the past quarter of a century many of the towns and cities of this State have availed themselves of the self-executing provision (section 8, art. 8) of the Constitution of 1895 and exempted manufacturing enterprises from taxation. It is also a matter of common knowledge that within the past few years the pressure of economic conditions which made it desirable for towns and cities to encourage the investment of capital in manufacturing enterprises by exempting such property from taxation for a limited period has extended to and become equally as exigent for counties and even for the States themselves. Ours is distinctively an industrial age, and the prosperity of counties and of states, as well as of cities and towns, is becoming increasingly dependent upon the opportunity afforded their people for employment in manufacturing industries and upon the taxable value of property devoted to and used in manufacturing enterprises. The conditions are keenly competitive, and it is not surprising that within the past few years a large number of the counties of this state have sought and received authority from the Legislature to exempt manufactories located within their borders from county taxes for a limited period of years.
"That the municipal purpose, from the standpoint of a county, subserved by the exemption from taxation for a limited period of years of a manufactory located or constructed within the county is not essentially different from that subserved by the exemption from taxation of county *Page 297 
bonds in the hands of purchasers (Chester County v. White,supra), would seem to be apparent. The ultimate object of exemption in either case is to promote the interests and to lighten the burden of the taxpayers of the county. * * *
"I think there is ample basis in reason for the adoption of such a legislative policy. If so, it follows that the exemption of `manufactories' from county taxation for a limited period of years is a `municipal' purpose within the power reserved to the General Assembly by this section of the Constitution. At all events, in view of the foregoing considerations, I am far from being satisfied beyond a reasonable doubt that the exemption granted by this statute was not for a `municipal' purpose within the meaning of the constitutional provision. Defendant's contention in that regard must, therefore, be overruled."
The Duke Power Company case is also conclusive against petitioner's contention to the effect that Article 10, Section 5, is an express mandate requiring the General Assembly to tax the property of International Paper Company and others similarly situated. In that case the Court had the following to say in connection with the effect of Article 10, Section 5:
"(2) Section 5, art. 10, of the State Constitution of 1895.
This section provides that taxes shall `be uniform in respect to persons and property within the jurisdiction of the body imposing the same,' and that the `General Assembly shall require that all the property, except that herein permitted to be exempted within the limits of municipal corporations, shall be taxed for corporate purposes,' etc. The equality and uniformity clause of this section is, in substance, exactly the same as that contained in section 1, except that it is directed and applied to taxation by and within a taxing subdivision of the State. In this section as in section 1, property `herein permitted to be exempted,' etc., is expressly excepted. The word `Herein,' as is clearly disclosed by the context, embraces *Page 298 
the whole of article 10, if not the whole of the Constitution itself. If, as we have seen, the exemption here in question is for a municipal purpose within the meaning of the exception or reservation contained in section 1, it follows, of course, that it is not prohibited by this section 5 of article 10."
The authority of the Duke Power Company case has never been questioned, and to the contrary it has been repeatedly recognized by the Supreme Court as binding authority.Clarke v. South Carolina Public Service Authority et al.,177 S.C. 427, 181 S.E. 481; Ellerbe v. David, 193 S.C. 332,8 S.E.2d 518; Trustees of Wofford College v. Cityof Spartanburg, 201 S.C. 315, 23 S.E.2d 9. Unless it is to be overruled the petition in this case will necessarily have to be dismissed.
Petitioner suggests that the Duke Power Company case
is not controlling in this case for the reason that the property involved in the Duke case was an electric power plant and that Duke Power Company was a public utility. It is evident, however, that this is not a valid distinction, because the property of Duke Power Company, even though devoted to the service of the public, nevertheless remained private property just the same as that of International Paper Company.Moore v. Columbia G.R. Company, 38 S.C. 1,16 S.E. 781; Mays v. Seaboard Air Line Ry. 75 S.C. 455,56 S.E. 30; Savannah Bldg. Supply Co. v. Atlantic CoastLine R. Co., 85 S.C. 405, 67 S.E. 1135.
Perhaps reference should be made to some of the cases chiefly relied upon by petitioner, all of which have been duly considered and are not thought either to require or to justify any conclusion contrary to that reached by the Court in the Duke Power Company case.
Petitioner refers to a statement contained in the opinion of Mr. Chief Justice McIver in Germania Sav. Bank v. Townof Darlington, 50 S.C. 337, 27 S.E. 846, 859, to the effect *Page 299 
that if the General Assembly had undertaken to exempt the property of Darlington Manufacturing Company from taxation, the effort would have been futile, because in violation of the Constitution; but Judge McIver went on further to say: "But, in addition to this, the general assembly has not undertaken to exempt any of the property of the company from taxation." It is thus quite apparent that the statement of Judge McIver relied upon by petitioner was wholly obiterdictum, and in addition to this the other members of the Court concurred in the result only.
The attempted tax exemptions held to be invalid in Garrisonv. City of Laurens, 54 S.C. 449, 32 S.E. 696, andMilster v. City of Spartanburg, 68 S.C. 26, 46 S.E. 539, were both made by city ordinances alone and while the Constitution of 1868 was in effect. Since a city or town has such powers only as are granted in express words or such as are necessarily or fairly implied from or are incident to the powers expressly granted (Luther v. Wheeler, 73 S.C. 83,52 S.E. 874, 4 L.R.A., N.S., 746, 6 Ann. Cas. 754), naturally the Court was required to hold that the ordinances were invalid and void. As the Court said in the Milster case
[68 S.C. 26, 46 S.E. 542]:
"The effort to bind the city amounts to no more than if the council had undertaken to legislate or make contracts for another municipality or for the entire state."
In Feldman Co. v. City Council of Charleston, 23 S.C. 57, 55 Am. Rep. 6, an exemption from taxation was not involved at all, but the question before the Court was the validity of an act of the General Assembly authorizing the City of Charleston to issue bonds to assist private individuals in carrying out private enterprises. The Court held that the bonds were invalid, since the power to issue the bonds necessarily implied the power to levy taxes to provide for their payment, and that the Legislature had no power to authorize the levy of taxes to assist private individuals in carrying out *Page 300 
private enterprises. It is readily apparent that the question involved in the Feldman case was very different from the question with which we are concerned in this case.
Ellerbe v. David, Co. Treas., 193 S.C. 332,8 S.E.2d 518, involved the validity of two joint resolutions of the General Assembly passed in 1938, 40 Stat. at Large, pp. 2630, and 2631, providing for the relief of certain taxpayers in certain school districts of Marlboro County who had suffered damage from hail in the year 1937. Under these resolutions the County Treasurer was authorized to borrow sufficient money to refund the 1937 taxes which had been paid by the hail sufferers, and provision was made for the levy and collection of taxes for the repayment of the loan. It will be noted that this involved the collection of taxes to repay a loan used wholly for the benefit of certain private individuals, although there were citizens and taxpayers of the County in other school districts who suffered hail storm damage and for whom no relief was provided. The Court held the resolutions invalid, but the authority of the Duke Power Companycase was in no respect questioned, and to the contrary was distinguished and in effect reaffirmed.
Gentry v. Taylor et al., 192 S.C. 145, 5 S.E.2d 857,858, involved the validity of an Act of the Legislature authorizing the County of Spartanburg to issue bonds, and to levy a tax for their payment, to aid in enlarging an airport in the City of Spartanburg. It was held that the act violated Article 10, Section 6, of the Constitution providing: "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, county officers, and for litigation, quarantine and court expenses, and for ordinary county purposes, to support paupers, and pay past indebtedness." The construction of an airport quite plainly not fitting any of the other purposes stated in this provision of the Constitution, *Page 301 
the only question to be determined was whether it was an ordinary county purpose. It was held that the construction of an airport was not an ordinary county purpose, and that the act consequently violated Article 10, Section 6, of the Constitution. The distinction between that case and the one now before the Court is obvious.
Doran et al. v. Robertson et al., 203 S.C. 434,27 S.E.2d 714, was a proceeding to enjoin the issuance of county bonds in compliance with a contract between the Board of County Commissioners of Charleston County and a private corporation for the construction of dwellings for war workers and the use of the proceeds of the bonds for the construction of sewers in rural communities. Following Gentry v. Taylor,supra, it was held that the issuance of these bonds not being for an ordinary county purpose, it was expressly forbidden by Article 10, Section 6, of the Constitution.
Parrott v. Gourdin, 205 S.C. 364, 32 S.E.2d 14, involved the validity of an act authorizing Williamsburg County to issue notes and levy a tax for their payment for the purpose of acquiring land for the construction of an airport. Again following Gentry v. Taylor, supra, it was held that the construction of an airport not being an ordinary county purpose the act violated Article 10, Section 6, of the Constitution. In connection with this case it may be properly noticed, however, that an amendment to the Constitution was adopted in 1945, see Acts 1945, p. 11, authorizing counties or townships to levy a tax and issue bonds for the construction and maintaining of airports or landing strips.
That the cases arising under Article 10, Section 6, of the Constitution are wholly foreign to the subject involved in this case is clearly indicated by Benjamin v. Housing Authorityof Darlington County, 198 S.C. 79,15 S.E.2d 737, 739. It was held in that case that the property of the housing authority might properly be exempted from taxation, but the Court further said: "Of course, if the County *Page 302 
of Darlington were responsible for the payment of any portion of the contemplated bond issue, or if it were in contemplation that a tax be levied on property in said County to pay any portion of the cost or maintenance of this project, it would be in violation of Article X, Section 6 of the Constitution. See Gentry v. Taylor et al., 192 S.C. 145,5 S.E.2d 857."
It would scarcely seem necessary to point out that the cases of Trustees of Wofford College v. City of Spartanburget al., 201 S.C. 315, 23 S.E.2d 9; Converse College v.City of Spartanburg et al., 201 S.C. 335, 23 S.E.2d 16, and Trustees of Wofford College and Converse College v.Burnett et al., 209 S.C. 92, 39 S.E.2d 155, have no application to the questions involved in the present case. In those cases the question was whether certain lands of the colleges were exempt from taxation under Article 10, Section 4, of the Constitution exempting from taxation certain property of schools, colleges and institutions of learning. The lands involved not being buildings and premises actually occupied by the colleges, it was held that their exemption from taxation was expressly forbidden by the following provision of Article 10, Section 4: "Provided, That as to real estate this exemption shall not extend beyond the buildings and premises actually occupied by such schools, colleges, institutions of learning, asylums, libraries, churches, parsonages and burial grounds, although connected with charitable objects." The Court in no respect questioned the authority ofDuke Power Company v. Bell, supra, but distinguished it on the ground that in the college cases there was an express prohibition, while such was not the case in the Duke PowerCompany case.
Being satisfied after careful consideration that the joint resolution of the General Assembly granting the exemption claimed by International Paper Company is not in conflict with any provision of the Constitution, and that it is in all *Page 303 
respects a valid enactment, it is ordered, that the petition herein be, and hereby is, dismissed.
May 4, 1948.
The appellant contends that the case of Duke Power Companyv. Bell, 156 S.C. 299, 152 S.E. 865, should be overruled, or held to apply only to the particular facts of that case; and on the petition of the appellant, we granted to him the right to criticize and argue against the holding in said case. However, no sound reason has been advanced why the Duke Power Company-Bell case should be overruled, and not here followed.
Being satisfied with the decree of the Honorable L.D. Lide, Judge of the Twelfth Judicial Circuit, we direct that his said decree be published as the opinion of this Court.
Affirmed.
BAKER, C.J., and FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.